**CAPITAL AIRLINES, Inc. v. UNITED STATES.**

No. 49241.

United States Court of Claims.

June 5, 1950.

Charles H. Murchison, Jacksonville, Fla., for the plaintiff. Stockton, Ulmer & Murchison, Jacksonville, Fla., were on the brief.

S. R. Gamer, Washington, D. C., with whom was Mr. Assistant Attorney General H. G. Morison, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

The plaintiff brought this suit to recover just compensation alleged to be due it under the Fifth Amendment to the Constitution on the ground that under the terms of the Civil Aeronautics Act of 1938, as amended, 52 Stat. 973, 998, 54 Stat. 1235, 49 U.S.C.A. § 401 et seq., the services and the property of plaintiff were requisitioned by the Government for public use, that plaintiff is entitled under the Fifth Amendment to just compensation for such compelled services and use of its property, and

that just compensation has not been paid for the period from September 1, 1945 to January 13, 1947.

The petition alleges that on December 16, 1942, the Civil Aeronautics Board, hereinafter sometimes referred to as the Board, under and pursuant to the provisions of the Civil Aeronautics Act of 1938, supra, fixed and determined a rate for the carriage of United States mails by plaintiff and that plaintiff received payment at such rate for mail transportation services, up to January 13, 1947. It is alleged, however, that the rate so fixed by the Board did not, for the period September 1, 1945, to January 13, 1947, provide that "just compensation" to plaintiff under the Fifth Amendment to the Constitution for the reason that during said period the plaintiff suffered a net loss from all of its operations amounting to $3,560,566. The petition further alleges that the plaintiff is entitled to recoup said loss of $3,560,566 and to earn a reasonable return upon its invested capital of $14,-434,823, as the "just compensation" to which it is entitled for the compelled services and use of its property, as required by the Civil Aeronautics Act. On this basis

the plaintiff computes the total amount to which it claims to be entitled as $5,793,308, plus interest as a part of just compensation, for which it sues.

The defendant demurs to the petition on the grounds that this court does not have jurisdiction of the claim as presented in the petition, and that the petition does not allege facts sufficient to entitle plaintiff to the relief sought or to constitute a cause of action against the United States.

At the time of the enactment of the Civil Aeronautics Act of 1938, the plaintiff was an air carrier engaged in air transportation of passengers, property, and mail. United States mail was transported under contracts with the Government. The Act of 1938, as amended, created the Civil Aeronautics Board, 49 U.S.C.A. §§ 421, 425, and provided for the issuance by the Board to air carriers engaged in interstate air commerce and transportation, of certificates of public convenience and necessity. 49 U.S.C.A. § 481(a) to (d) (1) and (2), inclusive.[1]

Section 485[2] relates to transportation of mail and provides in subdivisions (a) and

1. Subsection (e) (1) of section 481 provides in part:

"If any *applicant who makes application* for a certificate within one hundred and twenty days after June 23, 1938, shall show that, from May 14, 1938, until the effective date of this section, it, or its predecessor in interest, was an air carrier * * *, the Board, upon proof of such fact only, shall * * * issue a certificate or certificates, authorizing such applicant to engage in air transportation (A) with respect to all classes of traffic *for which authorization is sought, except mail,* between the terminal and intermediate points between which it, or its predecessor, so continuously operated * * *, and (B) with respect to mail and all other classes of traffic *for which authorization is sought,* between the terminal and intermediate points between which the applicant or its predecessor was authorized by the Postmaster General prior to the effective date of this section, to engage in the transportation of mail * * *." [Italics supplied.]

2. "(a) Each contract between the United States and any person for the carriage of

mail, entered into or continued under the provisions of the sections 469–469s of Title 39, and each contract for the carriage of mail by aircraft in Alaska, shall be continued in effect until canceled in accordance with this subsection. Each such contract shall be canceled upon the issuance to the holder of such contract of a certificate of public convenience and necessity authorizing the transportation of mail by aircraft between the points covered by such contract, or upon the failure of the holder of such contract to apply for such certificate within one hundred and twenty days after June 23, 1938, or upon a determination by the Board that such certificate should not be issued. Until the Board fixes rates under section 486 of this title, the Postmaster General shall pay compensation for the transportation of mail by aircraft at the rates provided by each such contract or, where rates have been heretofore or shall hereafter be fixed by orders of the Interstate Commerce Commission, pursuant to proceedings instituted prior to June 23, 1938, shall pay compensation for such transportation in accordance with such orders

(b) that each contract with the United States for the carrying of mail should continue in effect until canceled in accordance with the provisions of this section; that "Each such contract shall be canceled upon the issuance of a certificate of public convenience and necessity to the holder of such contract authorizing the transportation of mail by aircraft between the points covered by such contract, or upon the effective date of any order of the Board hereunder fixing a fair and reasonable rate of compensation for the transportation of mail by aircraft between the points covered by such contract, whichever is later, * * *."

Section 486, entitled "Rates for transportation of mail", provided, in subdivisions (a), (b), and (c), as follows:

"(a) The Board is empowered and directed, upon its own initiative or upon petition of the Postmaster General or an air carrier, (1) to fix and determine from time to time, after notice and hearing, the fair and reasonable rates of compensation for the transportation of mail by aircraft, the facilities used and useful therefor, and the services connected therewith (including the transportation of mail by an air carrier by other means than aircraft whenever such transportation is incidental to the transportation of mail by aircraft or is made necessary by conditions of emergency arising from aircraft operation), by each holder of a certificate authorizing the transportation of mail by aircraft, and to make such rates effective from such date as it shall determine to be proper; (2) to prescribe the method or methods, by aircraft-mile, pound-mile, weight, space, or any combination thereof, or otherwise, for ascertaining such rates of compensation for each air carrier or class of air carriers;

and (3) to publish the same; and the rates so fixed and determined shall be paid by the Postmaster General from appropriations for the transportation of mail by aircraft.

"(b) In fixing and determining fair and reasonable rates of compensation under this section, the Board, considering the conditions peculiar to transportation by aircraft and to the particular air carrier or class of air carriers, may fix different rates for different air carriers or classes of air carriers, and different classes of service. In determining the rate in each case, the Board shall take into consideration, among other factors, the condition that such air carriers may hold and operate under certificates authorizing the carriage of mail only by providing necessary and adequate facilities and service for the transportation of mail; such standards respecting the character and quality of service to be rendered by air carriers as may be prescribed by or pursuant to law; and the need of each such air carrier for compensation for the transportation of mail sufficient to insure the performance of such service, and, together with all other revenue of the air carrier, to enable such air carrier under honest, economical, and efficient management, to maintain and continue the development of air transportation to the extent and of the character and quality required for the commerce of the United States, the Postal Service, and the national defense.

"(c) Any petition for the fixing of fair and reasonable rates of compensation under this section shall include a statement of the rate the petitioner believes to be fair and reasonable. The Postmaster General shall introduce as part of the record in all proceedings under this section a comprehensive statement of all service to be re-

as if this chapter had not been enacted.

"(b) Each contract between the United States and any person heretofore entered into under the provisions of sections 465a and 465b of Title 39, shall be continued in effect until canceled in accordance with this subsection. Each such contract shall be canceled upon the issuance of a certificate of public convenience and necessity to the holder of such contract authorizing the transportation of mail by aircraft between the points covered by

such contract, or upon the effective date of any order of the Board hereunder fixing a fair and reasonable rate of compensation for the transportation of mail by aircraft between the points covered by such contract, whichever is later, or upon the failure of the holder of such contract to apply for such certificate within one hundred and twenty days after June 23, 1938, or upon a determination by the Board that such certificate should not be issued."

quired of the air carrier and such other information in his possession as may be deemed by the Board to be material to the inquiry."

As hereinbefore stated the plaintiff was engaged in transportation, including United States mail, at the time of the passage of the Civil Aeronautics Act and, pursuant to its application duly made for a certificate of public convenience and necessity for authority to continue in such transportation and carriage of the mail, it was issued a certificate under the provisions of Section 481(e) (1), supra, with respect to both transportation of mail and other classes of traffic over the same routes in which it had been engaged in such operations at the time of the passage of the Act of 1938.

Section 646[3] provides for judicial review of any order issued by the Civil Aeronautics Board.

Section 622 provides for criminal penalties against any person who knowingly and willfully violates certain provisions of the Act, including the provision with reference to the carriage of mail, "or any order, rule, or regulation issued under any such provision or any term, condition, or limitation of any certificate or permit issued under subchapter IV, for which no penalty is otherwise herein provided."

From a consideration of the facts upon which the plaintiff relies in support of its claim for "just compensation," in the light of the provisions of the Civil Aeronautics Act of 1938, we find no material difference, insofar as the authority of this court to consider the claim made by the plaintiff is concerned, between this case and the case of United States v. Jones, Receiver, 336 U.S. 641, 69 S.Ct. 787, 93 L.Ed. 938. In that case a railroad sought a money judgment in this court on the ground that the rates of pay for transporting United States mail which the Interstate Commerce Commission had fixed under the Railway Mail Pay Act, 39 U.S.C.A. § 523 et seq., did not afford the fair and reasonable compensation required by the Act, and that such rates were confiscatory and did not afford just compensation under the Fifth Amendment because they did not provide for the payment of the cost of the service rendered plus a reasonable return upon invested capital. The Supreme Court held that con-

3. "(a) Any order, affirmative or negative, issued by the Board under this chapter, except any order in respect of any foreign air carrier subject to the approval of the President as provided in section 601 of this chapter, shall be subject to review by the circuit courts of appeals of the United States or the United States Court of Appeals for the District of Columbia upon petition, filed within sixty days after the entry of such order, by any person disclosing a substantial interest in such order. After the expiration of said sixty days a petition may be filed only by leave of court upon a showing of reasonable grounds for failure to file the petition theretofore.

"(b) A petition under this section shall be filed in the court for the circuit wherein the petitioner resides or has his principal place of business or in the United States Court of Appeals for the District of Columbia.

"(c) A copy of the petition shall, upon filing, be forthwith transmitted to the Board by the clerk of the court; and the Board shall thereupon certify and file in the court a transcript of the record, if any, upon which the order complained of was entered.

"(d) Upon transmittal of the petition to the Board, the court shall have exclusive jurisdiction to affirm, modify, or set aside the order complained of, in whole or in part, and if need be, to order further proceedings by the Board. Upon good cause shown, interlocutory relief may be granted by stay of the order or by such mandatory or other relief as may be appropriate: *Provided*, That no interlocutory relief may be granted except upon at least five days' notice to the Board.

"(e) The findings of facts by the Board, if supported by substantial evidence, shall be conclusive. No objection to an order of the Board shall be considered by the court unless such objection shall have been urged before the Board or, if it was not so urged, unless there were reasonable grounds for failure to do so.

"(f) The judgment and decree of the court affirming, modifying, or setting aside any such order of the Board shall be subject only to review by the Supreme Court of the United States upon certification or certiorari as provided in sections 346 and 347 of Title 28."

sideration by this court of this claim amounted to a review and revision of the Commission's findings and orders as to "fair and reasonable" compensation for carrying the mail, and was beyond the jurisdiction of this court. The Court further held that the same result would follow if the suit could be regarded as one for just compensation under the Fifth Amendment, since the entry of a money judgment by the Court of Claims would short-circuit the Commission in the rate-making process. In the instant case the plaintiff, in its petition, seeks substantially the identical relief, which the railroads sought in the Jones case.

■ We cannot find in any of the provisions of the Civil Aeronautics Act a requirement that the Civil Aeronautics Board, in fixing rates for the carriage of United States mail, shall determine and pay "just compensation" in the sense in which that term is used in the Fifth Amendment, and we think it is plain that in enacting the Civil Aeronautics Act Congress had no such concept of the requirements of the Act that the Board should fix "fair and reasonable rates of compensation for the transportation of mail." Capital Airlines, Inc. v. Civil Aeronautics Board, 84 U.S.App.D.C. 176, 171 F.2d 339; Transcontinental & Western Air, Inc. v. Civil Aeronautics Board, 336 U.S. 601, 604, 605, 69 S.Ct. 756, 93 L.Ed. 911.

As hereinbefore pointed out, the Civil Aeronautics Board pursuant to the requirements of Section 486, U.S.C.A., Title 49, fixed a mail rate for the plaintiff on December 16, 1942, which the plaintiff received without petitioning the Board for a change in the rate, until January 13, 1947, at which time the plaintiff filed a petition with the Board asking the Board to fix mail rates effective from and after January 14, 1947. In that petition the plaintiff sought also to have the Board reconsider and increase the rate theretofore fixed in 1942, especially for the period September 1, 1945 to January 13, 1947, so as to compensate plaintiff for

the loss which it had sustained from its operations and to provide a fair return upon its invested capital.[4] The Board fixed a mail rate for the future but dismissed plaintiff's petition insofar as it sought a reconsideration and increase of the rate previously fixed and paid. The plaintiff appealed from this part of the decision of the Board to the United States Court of Appeals for the District of Columbia, and that court, in Capital Airlines, Inc. v. Civil Aeronautics Board, supra, sustained the decision of the Board, holding that plaintiff's inaction with respect to the 1942 order of the Board had caused the rates fixed therein to become final. The court further sustained the conclusion of the Board that it was without power under the Act to revise rates retroactively. In that case the plaintiff also made the contention which it makes here with respect to its right to "just compensation" under the Fifth Amendment, and upon this contention, the Court of Appeals said, 171 F.2d at page 340:

"The power to increase retroactively established rates which have prevailed unchallenged is not needed to vindicate the Constitutional requirement for just compensation (Fifth Amendment), or to fulfill any contractual obligation of the Government to the air lines. The Civil Aeronautics Act, 49 U.S.C.A. § 401 et seq., under which Capital chose to operate, embodies a scheme of just compensation for services rendered to the Government by requiring that fair and reasonable rates be fixed from time to time for carrying of the mail (Section 406(a)). This right is protected by the privilege accorded carriers to apply at any time for higher rates to compensate for future service to the Government. The Act, with its regulatory provisions, is not intended to underwrite profitable operation of a carrier's business, any more than statutes imposing regulation of public utilities are intended to insure them a net revenue. Federal Power Commission v. Natural Gas Pipeline Co., 1942, 315

4. Under Section 481(a) plaintiff had the right to file a petition on September 1, 1945, or at any time thereafter, asking the Board to change the existing rate for carrying the mail.

U.S. 575, 590, 62 S.Ct. 736, 86 L.Ed. 1037, and cases cited."

 The Supreme Court shortly afterwards affirmed this interpretation of the Civil Aeronautics Act in Transcontinental & Western Air, Inc., supra, in which it was held, 336 U.S. at pages 606, 607, 69 S.Ct. 756, 759, 93 L.Ed. 911, that Congress clearly did not intend by this legislation to indemnify air carriers against loss and to guarantee them any return whatsoever upon their investments; that such a reading of the Act "would in practical effect have the tendency to transform it into a cost-plus system of regulation," and that the revision of air mail rates retroactively so as to permit the recouping of past losses "would be a real innovation", and would amount to putting "rate-making * * * to such a novel use," and would constitute an "unprecedented * * * departure from the conventions of rate-making."

The Civil Aeronautics Act, as the provisions hereinbefore referred to show, vested exclusive jurisdiction and authority in the Civil Aeronautics Board, with the right of review by the United States Courts of Appeals and the Supreme Court, to determine fair and reasonable compensation for carriage of mail, and it is clear that a carrier cannot obtain in this court a review or revision of a mail rate which has been fixed and paid pursuant to an order of the Civil Aeronautics Board merely by basing its claim for a money judgment in this court upon the just compensation provisions of the Fifth Amendment. United States v. Jones, Receiver, supra, 336 U.S. at pages 669, 670, 69 S.Ct. 787, 93 L.Ed. 938. In substance, the claim which plaintiff makes in this case is that this court should increase the mail rate fixed by the Board in its decision of December 16, 1942, and allow a greater sum for the carriage of the mail for the period September 1, 1945, to January 13, 1947, than that which has been paid under and pursuant to the order of the Board.

In view of the provisions of the Civil Aeronautics Act of 1938, and for the reasons hereinabove stated, we are of the opinion that this court is without jurisdiction to entertain this suit because it must be regarded in substance as an attempt to obtain a review and revision of a rate order of the Civil Aeronautics Board. In any event, we are of the opinion that the petition fails to state a cause of action against the United States entitling plaintiff to the relief sought. The Act of 1938 is a regulatory statute, and the facts alleged in the petition are not sufficient to show that there has been a "taking" of plaintiff's property or services for a public use within the meaning of the Fifth Amendment to the Constitution.

The defendant's demurrer is, therefore, sustained and the petition is dismissed. It is so ordered.