946

HEMPHILL SCHOOLS, Inc.
v.
The UNITED STATES.
No. 41–55.

United States Court of Claims
Dec. 6, 1955.

J. Louis Monarch, Washington, D. C., for plaintiff. Morgan, Lewis & Bockius, Washington, D. C., were on the brief.

David Orlikoff, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

Defendant has moved to dismiss plaintiff's petition on the ground that this court lacks jurisdiction of the subject matter of the action.

For the purposes of this motion, the facts are as stated in the petition. Plaintiff, a New York corporation, operated an educational institution in Long Island City, New York. It entered into a contract with the Veterans Administration known as Contract No. V3006V–687. The contract covered the period December 1, 1949 to November 30, 1950, and provided for a night course of instruction in diesel engine mechanics. Plaintiff made a supplemental contract with the Veterans Administration which was known as Supplement No. 1 to Contract V3006V–687 and covered the same period as the original contract. The supplement provided for a night course in diesel engine mechanics at $0.70333 per student hour and for a day course in the same subject at $0.466 per student hour.

The rates of tuition set forth in the supplemental contract were determined by the Administrator of Veterans Affairs after consideration of cost data submitted by plaintiff for the period August 1, 1948 to March 31, 1949. Plaintiff was dissatisfied with the rate per student hour determined by the Administrator for the day course, but to the end that orderly instruction of the students should not be interrupted, it entered into the supplemental contract at the rate of $0.-466 per student hour for the day course. The plaintiff expressly reserved its right of appeal from the determination of the Administrator on the day rate and this right was specifically limited to the day course rate. The plaintiff pursued its appeal to the Veterans Education Ap-

peals Board which sustained the rate set by the Administrator for the day course as "fair and reasonable".

In computing the rates, the Administrator, according to the allegations in the petition, limited the administrative cost to 20 percent of the gross tuition income; disregarded a portion of the teaching cost; segregated a portion of the amounts classified in the cost data as teaching expense and transferred such sum to administrative expense; and apportioned 8.3 percent of the balance of teaching cost to the night course and 91.7 percent to the day course. In making its determinations the Board made cost allocations and reductions in plaintiff's allowable costs which also had the effect of reducing the rate per student hour for the day course. Plaintiff's petition characterizes these actions of the Board as "erroneous". Plaintiff alleges that a "fair and reasonable" rate of tuition for the day course is $0.5431 per student hour and, as a consequence, demands $54,000 in excess of the amount already awarded it under the contract.

When the Administrator and the Board set the day course rate, they reduced it by, among other things, lowering the allocation of certain over-all costs to the day course. This determination should have had the logical result, plaintiff alleges, of increasing the part of such over-all costs allocable to the night course. Plaintiff's alternative cause of action demands that, if the court does not disturb the rates set for the day course, it should increase the night course rates by increasing the percentage of costs allocable to the night course.

The controversy arose out of the rehabilitation program for veterans under the Servicemen's Readjustment Act of 1944, 58 Stat. 284, 38 U.S.C.A. § 693 et seq., also known as the G. I. Bill of Rights. Among the benefits conferred by that bill were provisions for the education of veterans. Section 400(b) provided, *inter alia*, that

"The Administrator shall pay to the educational or training institu-

tion, for each person enrolled in full time or part time course of education or training, the customary cost of tuition * * *." Veterans' Regulation No. 1(a), pt. 8, 38 U.S.C.A. following section 745.

In response to the great educational demands of veterans new schools were established and older schools totally transformed in character. In such cases the Veterans Administration felt that the "customary cost of tuition" would not provide a realistic standard for compensating schools; instead it required that such schools enter into contracts with the Veterans Administration on the basis of cost data submitted to it.

As a result of alleged abuses by the schools and complaints against the Veterans Administration in connection with the educational program, Congress passed two bills intended to remedy the situation. The first was appended to the Independent Offices Appropriation Act, 1950, the act of August 24, 1949, Public Law 266, 63 Stat. 631. It provided, in part, at page 653:

"* * * *Provided further*, That no part of this appropriation for education and training under title II of the Servicemen's Readjustment Act, as amended, shall be expended subsequent to the effective date of this Act for subsistence allowance or for tuition, fees, or other charges in any of the following situations:

\* \* \* \* \*

"(2) For any course of education or training for which the educational or training institution involved has no customary cost of tuition, until a fair and reasonable rate of payment for tuition, fees, or other charges for such course has been determined. \* \* \* If the Administrator finds that any institution has no customary cost of tuition he shall forthwith fix and pay or cause to be paid a fair and reasonable rate of payment for tuition, fees, and other charges for the courses offered by such institution. Any educational or training

institution which is dissatisfied with a determination of a rate of payment for tuition, fees, or other charges under the foregoing provisions of this paragraph shall be entitled, upon application therefor, to a review of such determination (including the determination with respect to whether there is a customary cost of tuition) by a board to be known as the 'Veterans' Tuition Appeals Board' consisting of three members, appointed by the Administrator for such purpose. Such board shall be subject, in respect to appointment, hearings, appeals, and all other actions and qualifications, to the provisions of sections 5 to 11, inclusive, of the Administrative Procedure Act, approved June 11, 1946, as amended. The decision of such board with respect to all matters shall constitute the final administrative determination. * * *"

In the following year, by the act of July 13, 1950, Public Law 610, 64 Stat. 336, many of the provisions of Public Law 266 were made into permanent law. Public Law 610, among other things, amended paragraph 11 of part VIII of Veterans Regulation Numbered 1(a), as amended, which regulation was part of the G.I. Bill of Rights, by adding thereto another subparagraph from which we quote as follows:

"(d) As used in this part, the term 'customary cost of tuition' or 'customary charges' or 'customary tuition charges' shall mean that charge which an educational or training institution requires a nonveteran enrollee similarly circumstanced to pay as and for tuition for a course, except that the institution (other than a nonprofit institution of higher learning) is not regarded as having a 'customary cost of tuition' for the course or courses in question in the following circumstances:

\* \* \* \* \*

"For any course of education or training for which the educational or training institution involved has no customary cost of tuition, a fair and reasonable rate of payment for tuition, fees, or other charges for such course shall be determined by the Administrator. * * * If the Administrator finds that any institution has no customary cost of tuition he shall forthwith fix and pay or cause to be paid a fair and reasonable rate of payment for tuition, fees, and other charges for the courses offered by such institution. Any educational or training institution which is dissatisfied with a determination of a rate of payment for tuition, fees, or other charges under the foregoing provisions of this paragraph, or with any other action of the Administrator under the amendments made by the Veterans' Education and Training Amendments of 1950, shall be entitled, upon application therefor, to a review of such determination or action (including the determination with respect to whether there is a customary cost of tuition) by a board to be known as the 'Veterans' Education Appeals Board' consisting of three members, appointed by the President. * * * Such Board shall be subject, in respect to hearings, appeals, and all other actions and qualifications, to the provisions of sections 5 to 11, inclusive, of the Administrative Procedure Act, approved June 11, 1946, as amended. The decision of such Board with respect to all matters shall constitute the final administrative determination. * * *"

These statutes recognized the system theretofore employed by the Veterans Administration of paying a fair and reasonable amount in any case where the institution had no customary cost of tuition. They both provide for appeal to a board, in the earlier statute to review the Administrator's determination on

whether there is a customary rate of tuition and what the fair and reasonable rate should be; in the later statute to review the rate or any other action of the Administrator under that latter act. Both statutes make the Board's decisions the final administrative determinations. In both the Board is subject in respect to hearings, appeals and all other actions to the provisions of sections 5 through 11 of the Administrative Procedure Act, 5 U.S.C.A. §§ 1004, 1010.

At this point defendant merely challenges the jurisdiction of the court over the subject matter. It says that United States v. Jones, 336 U.S. 641, 69 S.Ct. 787, 93 L.Ed. 938, and Capital Airlines, Inc., v. United States, 90 F.Supp. 926, 116 Ct.Cl. 850, preclude this court from reviewing the rate determinations of the administrative agency. In discussing to what extent the Court of Claims could review the determinations of the Interstate Commerce Commission involved in the Jones case, the Supreme Court said, 336 U.S. at page 669, 69 S.Ct. at page 802:

> " * * * review might be had of the carrier's claim whenever it does not run in the teeth of the Commission's findings or order or seek revision of that order. In other words, the claim must be one consistent with the Commission's order fixing the rate, but asserting underpayment by reason of some error of law in its application which would not require the Commission's further consideration for fixing a new rate."

The plaintiff's petition amply shows, both in the first and second causes of action, that it is seeking to have us revise the rate set by the Board. If the doctrine of the Jones case applies in this situation, we must dismiss the petition.

We think, however, that the present case is clearly distinguishable from the Jones case and the Capital Airlines case. We have here the question of compensating individual educational institutions furnishing services to veterans. While the agreements involved were not typical government contracts, they undoubtedly had many characteristics of such contracts. There were no such contracts in the Jones or Capital Airlines cases. In the instant case the services were furnished and the corresponding rates were specified for limited periods of time whereas the mail pay rates in the cases relied upon by the defendant were applicable for indefinite periods. In this case the Veterans Administration's connection with the schools was limited solely to compensating them for educating veterans. The carriers involved in the Jones and Capital Airlines cases, on the other hand, were regulated businesses under the general supervision of the very administrative agencies involved.

The Interstate Commerce Commission and the Civil Aeronautics Board may determine tariffs and regulate other activities of many of the carriers whose mail pay rates they set. They regulate businesses which are monopolistic in nature and present peculiar problems of cost accounting. They carry out national policies in regard to the commerce, postal service and the defense of the United States. The schools, on the other hand, are ordinary competitive enterprises. Their problems of accounting do not differ markedly from those encountered in business enterprises generally. Aside from regulations that are incidental to compensating the schools for their services to veterans, the Federal Government has no responsibility for or power over them.

The Government has argued that plaintiff's remedy, if any, is a review of the rates in the District Court under the Administrative Procedure Act, 60 Stat. 237, 5 U.S.C.A. § 1001 et seq. Plaintiff. on the contrary, believes that our jurisdiction is based on 28 U.S.C. § 1491, that the Administrative Procedure Act did not disturb our jurisdiction under 28 U.S.C. § 1491, and that the Administrative Procedure Act contemplates review of the actions of the board by this court.

We do not express any view as to whether the District Court has jurisdiction in this matter under the Administrative Procedure Act. We do decide that we have jurisdiction under 28 U.S.C. § 1491 and that the Administrative Procedure Act does not oust this jurisdiction. Defendant cites the Jones and the Capital Airlines cases on the latter point. We have already distinguished those cases.

Defendant relies on Patterson v. United States, 115 Ct.Cl. 348, but it may be distinguished also. In that case the plaintiff sought to recover for the taking of his alleged mineral claim. That claim was located on public lands. A Federal statute recognized such claims but only if there had been a discovery of a vein or lode. In the Patterson case the Department of the Interior had determined that no valid discovery had been made and that the plaintiff therefore had no compensable property right.

We held that the District Court should exercise review over the administrative action of the Department. At that stage the Department had merely determined whether or not the statute gave plaintiff a certain property right. A determination in plaintiff's favor would not only have fixed a property right in the plaintiff as against the Government, but would have established plaintiff's right in relation to the whole world. The Court of Claims does not refuse to review administrative determinations involving title, but where the administrative authority exercises a statutory power to create title in the plaintiff, as was the case in Patterson v. United States, supra, the plaintiff's recourse against the improper exercise of such power lies in the District Court. It is evident, therefore, that Patterson v. United States, supra, does not control here where the statute on which plaintiff is seeking review is not one intended to create a proprietary title.

Defendant's motion to dismiss plaintiff's petition for lack of jurisdiction is overruled. There are many issues, both factual and legal, disclosed in the pleadings, briefs, and oral arguments, especially as to the action of the Board and as to the interpretation of the contracts and statutes involved. The case will be referred to a commissioner of the court so that the facts may be fully developed before final disposition.

It is so ordered.

LARAMORE, MADDEN, WHITAKER and LITTLETON, Judges, concur.