JoNES, Chief Judge,
delivered the opinion of the court:
Plaintiff sues for the sum of $69,961.69 which it claims is additional compensation due above the tuition rate allowed by the Administrator of Veterans Affairs. This additional claim is for the period December 1, 1949, to November 30, 1950. Appeal was made to the Veterans’ Education Appeals Board which sustained the rate as determined by the Administrator of Veterans Affairs. The case was referred pursuant to rule 45(a) to Paul H. McMurray, a trial commissioner of the court, with directions to make findings of fact and recommendations for conclusion of law that the court adopt.
The court, having considered the evidence, the briefs and argument of counsel, has adopted the trial commissioner’s opinion and findings of fact with substantial modifications.
Pursuant thereto the plaintiff is entitled to recover the sum of $4,084.41.
It is so ordered.
*561 Wilbur K. Miller, Circuit Judge, sitting by designation; Laramore, Judge/ MaddeN, Judge, and Whitaker, Judge, concur.
OPINION BY THE TRIAL COMMISSIONER (AS MODIFIED)
Plaintiff is claiming additional compensation of $69,961.69 on the basis of the actual costs and expenditures made during the period covered by the claim, rather than on the basis of cost data submitted to the Veterans Administration covering a period prior to the beginning of the period covered by the contract in suit. Thus we have here, apparently for the first time in this court, a situation wherein plaintiff’s school is able to show the actual costs during the period of operation under the contract. If schools, authorized to furnish education and training ■ to veterans, should be permitted to proceed on that basis, and be paid the profit normally allowed, they would, in effect, have cost-plus contracts. It appears unlikely that such schools would be interested in contracts negotiated for prospective application to a school’s operation if such procedure was adopted. No provision is found in any legislative enactment of the Congress relating to operation of schools for education and training of veterans which provides for the review or renegotiation of contracts of the type involved here after the services have been performed.
Defendant insists that (1) the plaintiff’s financial statement for the contract period may not be considered by the court in determining a fair and reasonable rate of tuition, (2) plaintiff has failed to prove that the rate determination of the Veterans’ Education Appeals Board was erroneous, arbitrary, or not supported by substantial evidence, and (3) plaintiff has failed to exhaust its administrative remedies.
Earlier the defendant filed a motion to dismiss this claim on the basis that the Court of Claims is not vested with jurisdiction to review the determinations of fair and reasonable rates of tuition made by the Administrator of Veterans Affairs pursuant to the provisions of Public Law 266, enacted by the Congress August 24, 1949, 63 Stat. 631, and Public Law 610, enacted July 13, 1950, 64 Stat. 336. The *562 motion was denied by the court in a written opinion (133 C. Cls. 462). In overruling defendant’s motion to dismiss, the court stated (at p. 470) :
* * * There are many issues, both factual and legal, disclosed in the pleadings, briefs, and oral arguments, especially as to the action of the Board and as to the interpretation of the contracts and statutes involved. The case will be referred to a commissioner of the court so that the facts may be fully developed before final disposition.
. Pursuant to this remand, the parties were given full opportunity to offer any evidence, documentary or oral testimony, which they desired to have considered in the court’s review of the claim. Additional evidence was placed in the record by each party.
The attorney for the defendant has devoted much of his brief to argument in support of the statement that plaintiff’s cost data for the contract period may not be considered by the court in determining a fair and reasonable tuition rate, taking the position that plaintiff’s contention is sufficiently answered by the court’s opinion in Field School of Upholstery v. United States, 141 C. Cls. 807.
Plaintiff is willing and has agreed to accept the cost items concerning which there was no disagreement between the parties at the time the appeal was considered by the Board. Plaintiff also agrees to have allocations of various items made to the day course on the same basis used by the Board in its decision, if such allocations are applied to the exact costs for the contract period involved.[1]
As a practical and workable procedure, the Veterans Administration has prescribed by regulation that cost data covering a period preceding the effective date of proposed contracts would be utilized as a basis for arriving at the tuition rate under proposed contracts. This has been a standard practice over a period of years. The Veterans Administration had the authority to issue such a regulation (Change 4 of the applicable Veterans Administration Manual M-5, effective July 1, 1948) and it has been used and accepted by both plaintiffs and defendants in many cases. *563 It bas also been followed in tlie disposition of many suits filed in this court. If plaintiff’s view should prevail, it could mean that, as to future operations, no contract would be negotiated between the parties until some date subsequent to the completion of the entire period of instruction involved. Obviously such a procedure was never contemplated by the Congress when legislation was enacted authorizing the Administrator, of Veterans Affairs to determine fair and reasonable rates of tuition.
It appears from argument on behalf of the defendant that the opinion, previously held, namely, that this court has no jurisdiction to review the Administrator’s finding of a fair and reasonable rate of tuition, remains unchanged. The specific directive from the court hi its prior opinion would be a useless gesture if the court, in the final decision, should decline to review the complete record, and disregard new and material evidence which has been added to that record since the motion to dismiss was overruled. There have been hundreds of claims decided by the Veterans Administration which never reached the Veterans’ Education Appeals Board, and likewise a large number of appeals handled by that Board which have never been contested in this court. The number of suits filed in this court have been relatively few. The court has stated that it has jurisdiction to review the agency’s findings with respect to a fair and reasonable tuition rate. The court has also ruled in other cases that additional material evidence can be admitted and considered along with the administrative record. Volentine and Littleton v. United States, 136 C. Cls. 638; Art Center School v. United States, 136 C. Cls. 218; and Hemphill Schools, Inc. v. United States, supra; Carlo Bianchi and Company, Inc. v. United States, 144 C. Cls. 500. When an act of Congress or a contract made pursuant thereto makes final the action of an administrative agency official the court will not substitute its judgment for that of such administrative agency unless the decision is arbitrary or capricious or not supported by substantial evidence, or unless the board or agency misinterprets or misapplies the applicable law.
The principal disagreement between the Veterans Administration and the plaintiff, at the time the appeal was *564 before the Board, was concerned with the manner of handling two items of cost: (1) teaching and related costs, and (2) the administrative expense, with particular reference to establishment of a fair and reasonable tuition rate.
The plaintiff, a New York corporation, operated for profit an educational institution in Long Island City, New York, for instruction and training in diesel engine mechanics from 1935 until November 30, 1950. It operated a day course six hours a day, five days a week, covering a period of 34 weeks and 1,020 hours of training. It also operated an evening course three hours a night, four nights a week, for 300 hours of training, requiring attendance of any two evenings a week for a period of 50 weeks.
The plaintiff’s school was duly approved by the proper authorities of the State of New York as qualified and adequately equipped and operated to furnish vocational rehabilitation to eligible veterans under Public Law 16, March 24,1943, as amended, 57 Stat. 43, and education and training to eligible veterans under Public Law 346, June 22,1944, as amended, known as the Servicemen’s Readjustment Act of 1944, 58 Stat. 284.
The plaintiff claims additional compensation as tuition for veterans enrolled and trained in the day course under contract V3006V-687, which covered the final year of veteran training from December 1,1949, to November 30,1950. The rate of tuition under this contract w^as $.466 per student hour for the day course and $.7033 per student hour for the evening course, and payments have been made to plaintiff at the rates specified under the contract. The tuition rate for the evening course is not in dispute and no claim is made for any veteran training in the evening course.
During the same period covered by various contracts with the Veterans Administration, the plaintiff enrolled and trained nonveteran students in the day course, at a tuition rate of $500. This rate continued in effect for nonveterans until February 1, 1950, when a 10 percent increase was made, with the approval of State authority, increasing the tuition for nonveterans to $550 for the day course and $275 for the evening course.
*565 Prior to the expiration of contract V3006V-324, the plaintiff was notified that the rate of tuition for the evening course under this contract became frozen by Public Law 266, enacted August 24, 1949, as the Independent Offices Appropriation Act, 1950, 63 Stat. 631, 652, and the tuition rate of $211 for the evening course was specified in the final contract without further consideration being accorded the cost of this new course.
On November 9, 1949, the plaintiff submitted to the Veterans Administration cost data covering its operations for the last fiscal year, audited from April 1,1948, to March 31, 1949, together with the paid student hours of attendance for this period. The total student hours of paid attendance in the day course was 420,047 hours, representing 94.5 percent of normal capacity, and the paid attendance in the evening course was 75,630 hours, representing 42.5 percent of normal capacity.
The cost data submitted by plaintiff for the year ended March 31, 1949, sometimes referred to as the cost period, reflected total operating costs of approximately $226,780.44, of which plaintiff allocated $184,296.05 as the cost of the day course of instruction and training. By adding $20,477.34 for a profit allowance, the total of $204,773.39 was applied to 420,047 hours of student training, and plaintiff proposed a tuition rate of $.4875 per hour for the day course in the contract period to follow.
During the cost period reported, all regular instructors were paid on the basis of a 40-hour work week, with overtime at one and one-half of the regular hourly rate. On December 22, 1949, a supplemental report was submitted to the Veterans Administration providing for an increase in the salary of instructors by approximately 15 percent, effective December 1,1949, and a basic work week of 38 hours.
During the period that the plaintiff’s cost data was under study by the Veterans Administration, the basic work week for all regular instructors was reduced to 36 hours, effective January 3, 1950, and finally to 32 hours a week, effective March 16, 1950, under schedules of agreement with the teachers’ union. Under the final agreement with the union, the work schedule consisted of 30 hours of teaching, 50 min *566 utes of preparatory work, and one hour for paper work each week, so that the entire basic work week would be devoted to the day course.
The plaintiff had assigned three hours of the basic work week of 40 hours to night course duties in the cost data first reported. Kegular instructors generally were engaged six hours per week in night duties, for which they were paid overtime at one and one-half times the regular basic rates. The plaintiff had also employed a number of part-time instructors for assignment to the evening course, all of whom were paid at the overtime rates.
Following the effective date of the finad union agreement, plaintiff proposed that the basic salary of all regular instructors be assigned to the day course, and that the salary of the director, two counselors, and five assistant instructors, whose annual basic salaries amounted to $26,820, be allocated to both the day and evening courses. The plaintiff also employed two supervisor-instructors, one for theory instruction and one for shop practice, whose duties covered both day and evening courses and whose combined revised annual salaries amounted to $9,480.
As a result of its study and analysis of plaintiff’s cost data and the duties of plaintiff’s teaching personnel, the Veterans Administration transferred and assigned all of the salary of the director, two counselors, and portions of the salary of the two supervisors and assistant instructors to administration expense, in the sum of $20,400. The defendant did not consider the final reduction in the basic work week of 32 hours, but assigned three hours a week of the basic pay of all regular instructors to the evening course, at the rate of 8.33 percent of such compensation.
The Veterans Administration also made other minor adjustments and transfers which did not materially affect the final result. The administration expense, as increased by the transfer of a portion of the teaching costs thereto, was not allocated between the day and evening courses, but, in lieu thereof, the Veterans Administration made an allowance for administration expense of 20 percent of the tuition received from day student training. As a result of these adjustments and allowances, it was determined that the *567 plaintiff’s cost for day course training was $176,162.32, and, with a profit allowance of $19,573.59 representing % of such cost, also determined that the fair and reasonable cost for tuition was $195,735.91 for 420,047 hours of instruction in the day course, or $.466 per student hour.
The plaintiff continued the instruction of veterans and other students throughout the period of negotiations. Plaintiff was not satisfied with the rate of tuition determined by the Administrator of Veterans Affairs, but could not be paid for veteran instruction under Public Law 266 unless (1) it had a “customary cost of tuition”, or (2) until a fair and reasonable rate of tuition had been determined by the Administrator. Upon executing Supplement No. 1 to Contract V3006V-687, the plaintiff expressly reserved its right of appeal from the rate determined and stipulated therein for the day course.
Public Law 266 provided that no part of the funds appropriated for veterans’ education and training could be expended for tuition or other charges where the institution had no customary cost of tuition until a fair and reasonable rate of payment for tuition had been determined, but thereafter stated:
In any case in which one or more contracts providing a rate or rates of tuition have been executed-for two successive years, the rate established by the most recent contract shall be considered to be the customary cost of tuition notwithstanding the definition of “customary cost of tuition” as hereinafter set forth.
The plaintiff made timely appeal to the Veterans’ Education Appeals Board. Proceedings were conducted before a hearing examiner for the Board, who issued his initial decision May 9, 1952, wherein it was determined that the fair and reasonable tuition for the day course was $556.72 with a rate of $.5458 per student hour of instruction. The Administrator excepted to the initial decision and appealed for a final decision by the Board. A final decision of the Board was issued July 17, 1953, granting the exceptions of the Administrator and affirming the rate of tuition specified in contract V3006V-687.
*568 Tlie plaintiff’s appeal was made on only two items of cost: (1) teaching and related costs, and (2) administration expense. There was no dispute in respect of other classifications of cost and they were adopted by the Board in accordance with the determination of the Veterans Administration.
The Board allocated to the day course $64,420.68 of all basic salaries of regular instructors as reported in plaintiff’s revised salary schedule in the total sum of $66,000. The sum so allocated represents 3%8 °f such salaries for December 1949, 3%6 of such salaries for the period January 1 to March 15, 1950, and 100 percent thereafter. The plaintiff’s revised schedule of increased salaries for teachers included one instructor at $3,300 per annum who was not employed during the cost period. The increased basic annual salaries of all regular instructors previously employed amounted to $62,700.
The basic annual salaries of the school director, two counselors, two supervisors, and five assistant instructors, whose duties consisted largely of supervisory and related teaching duties, amounted to $36,300. These salaries were considered proper teaching costs by the Board and no part thereof was allocated to administration expense. These salaries were allocated by the Board to the day and evening courses on the basis of total hours the school was open for attendance, that is, 30 hours a week for the day course and 12 hours a week for the evening course. The day course was assigned 71.43 percent thereof, or $25,929.09.
In restoring the $20,400 to teaching, which the Veterans Administration had previously transferred to administration expense, the Board should have also restored $694.55 payroll tax applicable to that portion of the salaries. The amount applicable to the day course is 71.43 percent of $694.55, or the sum of $496.12.
In considering the plaintiff’s administration expense of $49,884.52, the Board excluded $17,605.31 for the determination of a fair and reasonable cost of tuition.
The plaintiff claimed $7,542.36 for home office salaries and expense in Los Angeles, commencing July 1, 1948, but projected this amount for a full year. There was no satisfactory evidence that this was a normal cost of the school nor *569 that it bad been previously borne during its operations from 1935 until June 30, 1948. Tbe Board properly excluded this cost, as well as $699.01 for entertaining company employees on an outing and Christmas party. The Board excluded an amount of $6,000, the salary of an accountant. This particular item had been in use and the position filled since 1935, long before the G.I. program was started. It was an established position in the regular organization. The Veterans Administration had allowed it, but the Board eliminated it without any adequate reason for doing so. Using the Board’s basis of allocation, 71.43 percent, and applying the amount to the number of student hours, the figure of $4,285.80 is reached. We can find no reasonable basis for the Board’s action in eliminating this item.
The Board allocated the salaries of the school manager and office employees to the day course on the basis of the courses offered for day and night classes, or 71.43 percent thereof. All other administration expense was allocated to the day course on the basis of student hours of attendance, or 84.74 percent of such costs.
All payroll taxes on executive salaries were excluded along with the home office salaries. It is clear that the Board, in allowing the school manager’s salary of $9,600 in full, should have allowed the payroll tax thereon of $120. The amount allocable to the day course at 71.43 percent thereof is $85.72.
The plaintiff was paid $147,545.51 for 316,621 student hours of instruction in the day course for eligible veterans during the contract period from December 1, 1949, to November 30,1950.
During the trial of this case the plaintiff offered its actual cost of operating the school during the contract period ended November 30, 1950, reflecting overall operating costs of. $255,990.33, tuition income of $219,683.12, and an operating loss of $36,307.21 before nonoperating credits of $13,542.01. (See finding 25.)
The enrollment of students in the day course dropped from 94.5 percent of capacity during the cost period to 78 percent during the contract period, whereas the enrollment of students attending the night course was maintained at approximately the same rate, or 43 percent of capacity.
*570 The plaintiff’s operating costs, as presented, covering the contract period, are found to be unsatisfactory and unacceptable as a basis for determination of a fair and reasonable tuition rate for the day course under contract V3006V-687.
The frozen rate of $.70338 for the night course was incorporated in the contract V3006V-687 at the “frozen” rate of the contract for the prior year under Public Law 266 (finding 6), but for reasons nowhere explained in the evidence the prior year’s rate for the day course was not considered as a “frozen” rate and additional cost data were asked by the defendant and furnished by the plaintiff.
Since the request was made by defendant, we must assume that the parties intended that the reasonable and necessary cost of the previous period should be given consideration in finding a fair and reasonable rate for the day courses.
Training rates as applied by the Veterans Administration were not based upon cost-plus contracts. The cost items were frequently used as a basis for determining what were fair and reasonable rates. In other instances the rates under certain conditions were to be based upon the customary rates for the period immediately preceding the contract period.
Apparently the plaintiff was unwilling to accept that basis, but undertook to apply the current contract costs. We find no authorization in the law for thus modifying the Veterans Administration’s method of determination of the rate that should be applied. In fact the plaintiff did not see fit to offer proof as to its customary rates immediately preceding the contract period in question.
The defendant did submit those facts which are therefore in the record. Otherwise we would have no means of determining whether the findings of the Board were arbitrary or capricious or supported by substantial evidence, nor whether they were made pursuant to a proper interpretation of the law.
We have carefully examined the record as submitted under the broad provisions of the order of reference. Full opportunity was given to submit any relevant facts.
While if the matter were before us for original decision we might reach a different conclusion as to the weight to be given certain items, we are neither authorized nor dis *571 posed to substitute our judgment for that of the experienced administrative agency, unless some of the exceptions above set out are found to be present. This we do not find. ■
The $694.55 payroll taxes applicable to $20,400 teaching supervisory salaries should have been added to this group (which was included in the $36,300 allocated by the Board) because this payroll tax was not considered in the administration expense (findings 17 and 18). Had the Board properly transferred the payroll tax and allocated it to the day course at the course rate of 71.43 percent thereof, the Board would have increased its overall allowance by $496.12 (71.43 percent of $694.55).
Likewise, in allowing the $9,600 the Board failed to allow the payroll tax of $120 actually paid by plaintiff. The Board failed to allot the 71.43 percent of this tax ($85.72) to the day course.
These small items were merely mistakes in the Board’s adjustments, which evidently were overlooked. We have no doubt that but for this oversight, the Board would have increased the tuition rate the small fraction that would have been necessary to absorb these items of actual expense.
In the circumstances we think, in addition to the accountant’s salary, it is proper to allow plaintiff to recover an adjustment in rate for these two items. The three items when adjusted, as set out in finding 21, to the number of student hours of instruction for eligible veterans during the contract period, amount to the sum of $4,084.41.
Plaintiff is entitled to recover the sum of $4,084.41.
FINDINGS OF FACT
1. Plaintiff, Hemphill Schools, Inc., was at all times material to this case a corporation organized for profit under the laws of the State of New York, with its principal place of business at Long Island City, New York. It was a subsidiary of Technical Crafts Corporation, a corporation organized under the laws of the State of California, with its principal office at Los Angeles, California.
2. Plaintiff operated a vocational training school which was licensed and approved by the Education Department of the State of New York to furnish education and training *572 to eligible veterans under the Servicemen’s Readjustment Act of 1944, Public Law 346, 78th Congress, June 22, 1944, as amended (38 TJ.S.C. 703a and Chap. 12A, Veterans’ Regulation No. la, part VIH), and to provide for vocational rehabilitation of disabled veterans under Public Law 16, 78th Congress, March 24, 1943, as amended (38 TJ.S.C. 703a and Chap. 12A, Veterans’ Regulation la, part VII). The school offered day and night courses in “Diesel Engine Mechanics and Maintenance and Operation of Engines.” It accepted veterans for training until November 30, 1950, and closed shortly thereafter.
3. This action is brought to recover $69,961.69 for providing instruction to veterans during the period December 1, 1949, to November 30,1950, under a negotiated contract with the Veterans Administration, No. V3006V-687, representing the difference between the tuition rates fixed in the contract pursuant to Veterans Administration regulations, known as Change 4, and the rates which plaintiff claims it would receive if computations are made on the basis of its actual costs for the period covered by the contract, or, in the alternative, for the sum of $10,000.
Defendant’s motion to dismiss plaintiff’s petition for lack of jurisdiction was overruled by this court in decision of December 6,1955,133 C. Cls. 462.
4. Contract V3006V-687, dated March 10, 1950, covering the period from December 1, 1949, to November 30, 1950, provided for instruction of eligible veterans in an evening course of 300 hours, with attendance of two evening classes a week of three hours each for a period of 50 weeks, at the price of $211 for the course or $.70333 per student hour of instruction. Evening classes were held four nights a week, Mondays through Thursdays, and students were authorized to attend any two of the classes. The tuition represented the price of the course and no deduction was to be made for reasonable absences not to exceed 10 percent of the total hours. Make-up instructions for excused absences in excess of 10 percent were payable at the hourly rate of tuition.
Supplement No. 1 to the above contract, dated June 15, 1950, covered the period December 1, 1949, to November 30, 1950, and provided for instruction to eligible veterans in *573 a day course of 1,020 hours, consisting of six hours of instruction a day, five days a week, Mondays, through Fridays, excepting only regularly observed holidays, for a period of 34 weeks, at a tuition price of $475.32 for the course, or $.466 per hour of instruction. It also provided for an evening course of 300 hours at $211, as described above. Reasonable absences not to exceed 8 percent of the day course and 10 percent of the night course were allowed without any deduction from the tuition, but absences in excess of such percentages were to be made up within 30 days, and the make-up instruction was payable at the hourly rates.
The day course consisted of 411 hours of class instruction and 609 hours of shop practice, whereas the night course consisted of 150 hours in each of these categories of instruction.
By Supplement No. 2, dated March 26, 1951, reasonable absences were limited to 5 percent of the regular attendance for the period from December 1,1949, to March 6,1950, but, thereafter, the paid absence of 10 percent for the night course and 8 percent for the day course was applicable, as set forth under Supplement No. 1.
Supplement No. 1 to contract V3006V-687, which provided for the day course of instruction, contained the following provision:
The following clause applies to the Day Course in Diesel Engine Mechanics, only:
“The execution of this contract shall be without prejudice to the Hemphill Schools, Inc., to appeal to the Veterans’ Tuition Appeals Board the question of existence of customary costs or fair and reasonable rates; and the contract shall be subject to any revision made by said board pursuant to the governing statutes and regulations.”[2]
5. Effective July 1, 1948, the Veterans Administration issued Change 4 to Manual 7-5 (38 C.F.R. 21.530), which required that tuition rates would be henceforth determined on a fair and reasonable basis predicated upon detailed *574 financial statements, hereinafter referred to as “cost data,” to be submitted by all profit schools such as that operated by the plaintiff. Change 4 reads in pertinent part as follows:
§ 21.530. Determination of fair and reasonable compensation.,. The determination of fair and reasonable compensation by the manager, as in the case of courses of less than 30 weeks, or courses of 30 weeks or more in institutions other than nonprofit will require the submission by the educational or training institution of detailed, certified financial statements showing the most recent actual cost experience of the institution for the specific courses involved including cost data on the items of expense which will be used for the determination of fair and reasonable compensation, the basis on which teaching salaries and other expenses have been allocated to the courses involved, and the number of students enrolled and the number of clock hours or credit hours during the period covered by the cost data. In the case of new courses for which no actual cost experience is available, estimated costs may be submitted.
Sji % # JjC
(b) For institutions other than nonprofit for either courses of less than SO weeks or courses of 30 weeks or more. Fair and reasonable compensation for schools operated for profit will not exceed the actual or estimated costs to the institution for providing the instruction, plus an allowance for profit as indicated below. In determining the fair and reasonable compensation all expenses, except expenses for sales commissions and promotional plans, which are reasonable and necessary for the operation of the courses involved will be included in the cost statement and such expenses will be grouped into the general categories set forth below within the limits designated.
(1) Actual cost of teaching and related personnel at reasonable salaries. Teaching and related personnel will include personnel essential to the teaching function such as laboratory supply room attendants and clerical personnel assisting teachers in the preparation of instructional material and records. The salaries of personnel serving both in administrative and teaching functions will he prorated accordingly. The cost shown for teaching personnel will be supported by a schedule listing the name, title, annual salary rate, and will show whether employment is part-time or full-time for each person included in such cost.
*575 Consumable instructional supplies.
(3) Depreciation on building and equipment actually used for instruction of students at rates allowed by the Bureau of Internal Revenue for income tax purposes.
(4) Reasonable rent.
(5) Cost of heat, light, power, water, janitor service, and building maintenance.
Taxes and insurance, exclusive of income taxes.
(7) Actual administrative expenses which are considered reasonable and necessary in the operation of the school and are properly allocable to the courses under review. Such expenses may include salaries of administrative and clerical personnel representing reasonable compensation for services actually performed and the cost of such items as postage, telephone and telegraph, travel, interest, legal and accounting fees for actual service (not retainers), stationery and office supplies, and such other similar expenses as are reasonable and necessary for the operation of the school, provided that in no case will there be included in the fair and reasonable cost determination a base salary in excess of the rate of $10,000 per annum for an individual who has a proprietary or bonus interest in the institution. The administrative cost must be itemized and the salary items must be supported by a statement showing for each person the name, title, annual salary, percentage of time devoted to administration, and the amount of salary allocated to the cost of the courses under review. All cases where requested administrative costs exceed 15 percent of subparagraphs (1), (2), (5), and (6) of this paragraph shall be forwarded to the Assistant Administrator for Vocational Rehabilitation and Education, central office, for review and approval.
(8) Advertising expense calculated in accordance with the procedure set forth below and not to exceed the limitations prescribed herein.
(i) Determination of amownt allowable for advertising expense. * * * In no event will a newly established school, without actual cost experience for advertising expense, be permitted to include advertising expense in excess of 8 percent of gross income from tuition for resident instruction.
$ $ $ $ ‡
(9) Profit not to exceed 10 percent of the amount customarily charged to nonveteran students for the course. * * * If no nonveteran students are enrolled and there is therefore no real customary charge actually *576 being paid by nonveteran students, the profit allowance will be determined as one-ninth (%th) of the total allowable costs included in subparagraphs (1) to (8) of this paragraph.
(10) Expenses for sales commissions and promotional plans will not be allowed.
(c) When the manager has comfleted his analysis of the cost data. When the manager has completed his analysis of the cost data, he will determine on the basis of the total number of all students trained and cost of the items listed herein after reflecting known changes in costs whether the customary charges of the educational or training institution are fair and reasonable. In making this determination, the manager will give consideration to the fact that it is not fair and reasonable for the Veterans’ Administration to pay a charge based on the full cost of operating an educational institution under abnormal situations, such as periods when enrollments in the institution are far below the normal capacity and expectancy of the institution, or where operating costs are greatly in excess of normal operating costs for other comparable institutions in the same general locality. Contracts, when required, will be negotiated to provide payment not to exceed the amounts determined by the manager to be fair and reasonable as provided herein.
6. Plaintiff entered into written contracts with the Veterans Administration under Public Law 346, enacted June 22, 1944, for the training of veterans in evening courses during the prior period commencing December 28, 1945, as follows:
(a) Contract VA 6 EVE 88 provided for instructions to veterans in an evening course of 300 hours commencing December 28,1945, which, by renewal thereof, was extended to November 30, 1947, at a tuition price of $275, equivalent to $.9167 per hour.
(b) Contract VA 6 EVE 397 provided for instruction to veterans in an evening course of 300 hours, December 1, 1947, to November 30,1948, at a tuition price of $250, equivalent to $.8333 per hour.
(c) Contract V3006V-324 was executed April 18, 1949, covering the period from December 1, 1948, to November 30, 1949, and provided for instruction to veterans in an evening course of 300 hours, consisting of 150 hours of *577 class theory and 150 hours of shop practice, for the price of $211 for the course or $.70333 per hour.
Plaintiff was notified that the price of $211 for the evening course under contract V3006V-324 became frozen under Public Law 266 and this price was carried into the contract in suit without any consideration of cost data or the determination of a fair and reasonable rate.[3] There is *578 no dispute with, respect to the tuition paid for veteran training in the evening course.
7. Plaintiff entered into negotiated written contracts with the Veterans Administration under Public Laws 16 and 346, 78th Congress, for the training of veterans in day courses commencing July 2,1945, as follows:
(a) Contract VA6r-vr-198 was approved October 19, 1945, for supervised instruction of veterans in a day course of 1,020 hours at a tuition price of $500, equivalent to $.4902 per hour, for the period July 2, 1945, to June 80, 1946. The course consisted of 282 hours of theory instruction and 738 hours of shop practice, six hours a day, five days a week, for a period of 34 weeks.
By renewal agreement approved July 1, 1946, this contract was extended without change to June 30, 1947. By renewal agreement No. 2 it was further extended to November 30,1947, without change of any provisions therein.
(b) Contract VA6r-vr-685 was executed and approved December 1,1947, for instruction of veterans in a day course of 1,020 hours at $500 during the period December 1, 1947, to November 30,1948. The course consisted of 282 hours of theory and 738 hours of shop practicee for a period of 34 weeks. It also provided for reasonable absences not to exceed 5 percent of the total hours in the course.
(c) Contract V3006V-324 was dated December 1, 1948, but executed about April 18, 1949, and transmitted to the plaintiff April 19, 1949. It provided for instruction to veterans in a day course of 1,020 hours at a tuition price of $470, “payable at the rate of $.46078 per hour,” during the period December 1,1948, to November 30,1949. The course consisted of 411 hours of theory and 609 hours of shop practice for a period of 34 weeks of attendance of 6 hours a day of five days a week, with payment for reasonable absences not to exceed 5 percent of the total hours in the course.
This contract also provided for the night course of 300 hours at a tuition rate of $211, as reported in the preceding finding.
Under the provisions of Public Law 266, the rates contained in contract V3006V-324 had 'become the customary cost of tuition for the night course based on contracts for *579 two prior successive years. The rate of tuition for the day course for the following period, in the contract now in suit, was not determined to be customary or “frozen,” but was based upon plaintiff’s prior cost experience and a determination of a fair and reasonable rate by the Veterans Administration in accordance with applicable law and regulations. This determination with respect to a customary rate- is not an issue in this suit.
8. Prior to the enactment of Public Law 346, June 22, 1944, the plaintiff conducted a day course of 510 hours in diesel engine mechanics for nonveterans at a tuition rate of $325, less a cash discount of 10 percent. Following the enactment of Public Law 346, the tuition rate was increased to $500 for the day course. It was begun as a 1,500 hour course, but was later reduced to 1,020 hours, being the same course provided for veterans.
Throughout the period of veteran training from July 2, 1945, the plaintiff’s tuition to nonveterans for the day course of 1,020 hours was $500, until February 1,1950, when it was increased 10 percent to $550 for the course. The rate to nonveterans for the night course prior to February 1, 1950, is not determinable from the record in this case.
On January 23, 1950, the Assistant Commissioner for Vocational Training of the State of New York approved increased tuition rates to $550 ($.5392 per hour) for the day course of 1,020 hours and $275 ($.9167 per hour) for the evening course of 300 hours, retroactively effective to December 21, 1949. The plaintiff was advised in the same letter that the tuition rate approved April 17, 1945, for the day course and the rate approved March 2, 1948, for the night course were terminated as of the effective date of the increased rates. The plaintiff placed the increased rates in effect February 1,1950.
9. On November 9, 1949, the plaintiff submitted cost data to the Veterans Administration for the fiscal year which ended March 31, 1949, sometimes referred to as the cost data period, as distinguished from the contract period, which was from December 1, 1949, to November 30, 1950. The cost data was accompanied by a schedule of paid hours *580 of student attendance for the same year, sometimes called the enrollment record.
The enrollment for the day and evening courses, which is not in dispute, was as follows:

The average attendance for the day course of 30 hours a week was 269.3 students (420,047-1-52 times 30). The average attendance for the evening course of only four nights a week of three hour sessions was 121 (75,630-1-52 times 12).
The normal capacity of plaintiff’s school was approximately 285 students. Thus the enrollment in the day course during the year ended March 31, 1949, averaged 94.5 percent, whereas the enrollment in the evening course for the same year averaged only 42.5 percent of capacity.
The applicable regulations generally required the enrollment record and cost data for the most recent period preceding the period of the contract under negotiation, with adjustments for known changes. In submitting cost data for the year ended March 31, 1949, the plaintiff reported that it was the latest audited data for a complete year and certified that there had been no material change in expense other than reflected in its report. The plaintiff also reported that there was no material change in its student enrollment and submitted a table of paid hours of attendance for a six-month period immediately following its cost data period, i.e., April 1949 to September 1949, totaling 213,566 paid hours, which reflects an average enrollment of 273.8 (213,566 h-26 times 30).
10. The plaintiff’s cost data for the year ending March 31, 1949, were submitted under the several items of classification required by the regulations quoted in finding 5. The total costs reported, with adjustments for known changes, amounted to approximately $226,780.44, of which $184,-296.05 was allocated to the cost of the day course. By adding $20,477.34 for a profit allowance, the plaintiff determined that its price should be $204,773.39 for 420,047 *581 hours of instruction in the day course, and proposed a rate of $.4875 per student hour.
Except for teaching and related personnel salaries, the allocation in each of the expense classifications was made on the basis of the percentage of instruction hours paid for, which was 84.74 percent for the day course.
The plaintiff’s schedule of teachers and related personnel reflects that all regularly employed teachers were engaged 46 hours a week, excepting a few who worked 49 hours a week, during the year ended March 81, 1949. The basic work week was 40 hours of regular work, of which 37 hours were allocated to the day course, or 92.5 percent of their regular salary. Three of the 40 hours were allocated to the night course. The remaining six hours, and, in a few instances, nine hours, a week were paid for at one and one-half times the regular hourly rate for instruction of students in the evening course. The plaintiff also employed some 14 part-time instructors, and a number of assistant instructors, who were engaged entirely on the evening course and whose time was all compensated at one and one-half times their regular hourly rates of pay.
The plaintiff allocated to the day course 92.5 percent of its adjusted regular annual salaries of $85,995.44, or the sum of $79,545.80. This represents 77.3 percent of its total teaching salaries of $102,882.67, which includes salaries for evening instruction, most of which were paid at one and one-half times the regular rates.
11. On December 22,1949, the plaintiff submitted supplemental cost data consisting of a schedule of revisions in the salaries of teaching and related personnel which became effective December 1,1949. This schedule reflected increases in the basic compensation for regular teachers from $85,995.44 to $99,000, amounting to an average increase of approximately 15 percent. But the revised schedule included an additional teacher at a regular salary of $3,300, making the total $102,300, instead of $85,995.44 previously reported.
The plaintiff allocated 92.5 percent of the revised teaching salaries to the day course, with an adjustment in the payroll *582 taxes, and claimed a revised cost of $539.54 for the day course of 1,020 hours or $.529 per hour of instruction.
12. The basic work week was also reduced from 40 to 38 hours, along with the basic salary increases effective December 1, 1949. On January 3, 1950, the plaintiff reported to the Veterans Administration, for attention of the contract officer who was engaged in the study analysis of plaintiff’s cost data, that the new work schedule for instructors placed in effect December 1,1949, consisted of a 36-hour work week, but the 36-hour week was actually made effective January 3, 1950. During the period that plaintiff’s cost data were under study by the Veterans Administration, the plaintiff furnished additional data when requested. There was a strike of the instructors in January 1950, and a further walkout in March 1950, in an effort to obtain reduced basic working hours. The basic work week of 38 hours in effect December 1, 1949, was reduced to 36 hours, effective January 3, 1950, and it was further reduced to 32 hours, effective March 16, 1950. The agreement with the teachers’ union provided, effective March 16, 1950, that the basic work week, at the current base pay, would be 32 hours and would include 30 hours of instruction, 50 minutes of preparatory work, and 1 hour for grading papers: This schedule resulted in all teaching in the night course* thereafter, being paid for at one and one-half times the regular basic rates.
The plaintiff’s regular teaching persomiel consisted of a director, two counselors, two supervisors, 15 regular instructors, and five 'assistant instructors. On April 13, 1950, the plaintiff advised the Veterans Administration that, effective March 16, 1950, the basic salary of the regular instructors was chargeable 100 percent to the day course, but that the basic salary of the director, two counselors, and five assistant instructors, amounting to $26,820 per annum, was allocable to both day and night courses.
13. The Veterans Administration transferred from teaching costs to the classification of administration expense 40 percent of the director’s salary, all of the salaries of the two counselors and a portion of the salaries of the two supervisors and assistant instructors, amounting to $20,400, and disallowed $1,005.74 of the supervisors’ salaries, which rep *583 resented the excess of their salaries over and above the highest paid union instructor, for the time that they were engaged in teaching classes.
The remaining basic salaries for teaching and related personnel were allocated at 91.67 percent (8%6) to the day course and 8.33 percent (%6) to the evening course. This allocation was computed upon the basic work week of 36 hours with 3 hours devoted to the evening course. The reduction of the basic work week for regular instructors to 32 hours, effective March 16, 1950, was ignored as an unknown factor at the time the determination was made by the Veterans Administration.
Other lesser amounts were transferred from one classification to another and some adjustments were made in the plaintiff’s cost data that were not contested. As a result of the transfers and adjustments, the total administration expense was determined by the Veterans Administration to be $60,587.27. This item was not allocated between the day and evening courses, but the Veterans Administration made an arbitrary allocation of 20 percent of the tuition earned of $202,187.25 from the day students, amounting to $40,437.45 in lieu of the administration expense determined.
All classifications of costs, other than teaching and administration expense, were allocated on the basis of 84.74 percent to the day course and were not questioned in the plaintiff’s appeal to the Veterans’ Education Appeals Board.
The costs so allocated by the Veterans Administration to the day course were $176,162.32, which, with an allowance of $19,573.59 as profit, resulted in a determination that a fair and reasonable cost for the year was $195,735.91. The rate of tuition for 420,047 hours of instruction in the day course was thus determined at $.466 per student hour, or $475.32 for the day course. This rate was carried into the contract covering the period from December 1, 1949, to November 30,1950, as set out in finding 4.
14. The plaintiff made timely appeal to the Veterans’ Education Appeals Board pursuant to the reservation clause in contract V3006V-687. The initial proceedings were conducted before a hearing examiner during the period from March 31, 1951, to February 18, 1952. The entire record *584 of the proceedings on appeal, including the final decision of the Board, has been received in evidence in this case.
On May 9, 1952, the hearing examiner issued his initial decision, wherein it was determined that the fair and reasonable rate of tuition for the day course under contract V3006V-687 was $.5458 per hour of student instruction, which is equivalent to $556.72 for the course. In making this determination, the hearing examiner held that “the teaching personnel performed no duties except in relation to the day course in Diesel Engine Mechanics.”
This finding was contrary to plaintiff’s letter to the Veterans Administration of April 13, 1950, which was received as the appellant’s exhibit 22, and reads, in part, as follows:
This is to inform you that as a result of our contract negotiations with the Union, we have been compelled to change the working hours or our Instructors from a 40 hour week to a 32 hour work week. * * *
For your information, all salaries appearing on Schedule 1, revised, in the amount of $75,480.00 should be charged to the Day Course, with the exception of the following which should be allocated to the Day and Night Course: * * *
The list that followed included the director, two counselors, and five assistant instructors having annual basic salaries of $26,820.
The Administrator of Veterans Affairs filed exceptions to the initial decision of the hearing examiner and the case was argued before the Veterans’ Education Appeals Board August 18,1952.
15. The final decision of the Veterans’ Education Appeals Board, which related to both the appeal of the plaintiff and the Administrator’s exceptions to the decision of the hearing examiner, was issued July 17, 1953. The Board granted the exceptions of the Administrator and held that the rate of tuition in the contract for the day course was fair and reasonable.
In its final decision the VEAB determined that the plaintiff’s fair and reasonable cost of teaching the day course was $90,349.77 and its administration expense $24,738.88, in contrast with a determination of the Veterans Administration of $74,180.04 for teaching and $40,437.45 for the *585 administration expense. Other items of expense were adopted by the Board since they were not in dispute and were not appealed.
The Board determined that the fair and reasonable cost of operating plaintiff’s school for the fiscal year ended March 31, 1949, adjusted for the salary increases and reduced basic hours for regular instructors and with other minor adjustments, was $176,562.30, to which was added a profit allowance of $19,618.03. The total of $196,180.33 was substantially the same as that determined by the Veterans Administration for the establishment of the contract rate of $.466 which the Board held was fair and reasonable.
TEACHING AND RELATED COSTS
16. The Board restored to teaching classification all of the $20,400 which the Veterans Administration determined to be properly classified as administration expense, as well as $1,005.74, which was held to be excessive salaries of the supervisors for the time they were engaged in conducting class work. (See finding 13.) The Board then found that any “across the board” allocation of teaching costs could not be appropriately employed for all teaching personnel, but that a different formula should be applied to those employees who were engaged in a supervisory capacity and performed other duties which were related to teaching in both day and evening courses. The plaintiff had conceded that certain employees so engaged, whose basic annual salaries amounted to $26,820, were properly allocable to both the day and night courses. But the Board held that the two supervisor instructors should also be placed in this category. The plaintiff had employed one theory supervisor and one shop supervisor for both day and evening courses, with combined revised annual basic salaries of $9,480.
The Board held that the salaries of these employees were properly allocable to the day and evening courses on the basis of the courses offered, that is, 30 hours a week for the day course and 12 hours a week for the night course, represented by four nights a week at three hours a night. The allocation to the day course was represented by 3%2 or 71.43 percent of $36,300, or $25,929.09.
*586 As to the basic annual salaries of all regular instructors, amounting to $66,000 per annum, tbe Board beld that, after March 15,1950, the total amount of these salaries was properly allocable to the day course, in accordance with the union agreement reported in finding 12. But it was determined that prior to March 16, 1950, these instructors could have reasonably given three hours a week to the evening course during the 36-hour week from January 3, 1950, as well as during the 38-hour week in December 1949. The allocation of these salaries was made to the day course in the sum of $64,420.68 in the manner following:

The Board did not disturb the payroll taxes applicable to teachers’ salaries which had been transferred to the classification of taxes and insurance since there was no dispute in respect to. this item. But it failed to allow the payroll taxes of $694.55 which were applicable to the $20,400 of salaries and previously transferred to administration expense.
The Board thus determined teaching costs to be $90,349.77.
17. The payroll taxes of $694.55 transferred by the Veterans Administration to administration expense should be restored along with the $20,400 to teaching costs, since they were not considered in the administration costs. The amount allocable to the day course at 71.43 percent of $694.55 is $496.12.
ADMINISTRATIVE EXPENSE
18. The plaintiff reported total costs of $49,884.52 under this classification, of which $42,272.15 was allocated to the day course, representing 84.74 percent.
The VEAB deleted sums totaling $17,605.31 for the determination of fair and reasonable costs. The items excluded were home office salaries, including payroll taxes, of $3,864, home office expense of $3,678.36, an accountant for $6,000, traveling expense of $3,240.43, interest and discount of $742.73, and miscellaneous of $79.79.
*587 The Board then allocated 71.43 p.ercent of the salary of the school manager, W. S. Gravener, i.e. $9,600, and other office salaries of $10,046.40 to the day course, which was based upon the hours in the courses offered for both day and night, as first determined for the supervisory and related teaching personnel. The remaining $12,632.81 was allocated to the day course at 84.74 percent, which was based upon student attendance as reported in finding 9 herein. The amount so allocated was reported by the Board in its decision at $24,738.88.
The home office salaries and payroll taxes excluded by the Board in the total sum of $3,864 represent salary of $3,600 and payroll taxes of $264. Since it has been determined that $120 of this payroll tax was paid on the manager’s salary of $9,600 which was allowed by the Board, the tax itself would be allowed. The amount allocable to the day school is 71.43 percent of $120 or $85.72.
19. The plaintiff claimed a part of the salary for Ralph Hemphill, President, and R. A. Dotterer, Assistant Treasurer, as well as a part of the home office expense of Technical Crafts Corporation, in Los Angeles, California, in the operation of the Hemphill Schools in New York. The costs were reported for the period from July 1, 1948, to the close of the fiscal year ended March 31, 1949, although the evidence does not show the date when the home office was first established.
The salaries of Hemphill and Dotterer were based upon rates effective April 1,1949, or prior thereto for the previous nine-month period, but projected over a full year and allocated to Technical Crafts Corporation and four affiliated companies, including the plaintiff. The expenses of the home office for the nine-month period beginning July 1,1948, were projected over a full year, of which plaintiff was assigned 39.64 percent and the remainder to other affiliated companies.
The evidence establishes that the home office had developed and standardized the lesson material for all of Technical Crafts schools over the years, obtained blanket coverage of various types of insurance, conducted a national program of *588 advertising, established accounting standards for efficiency, and rendered advice on financial and other matters.
The plaintiff reported advertising expense for the year of $11,971.23 amounting to over 5 percent of its total costs; insurance and taxes, other than social security tax on payrolls, of $4,160.46; and consumable supplies, consisting of shop and lesson materials, of at least $18,080.68. When materials are billed by one affiliate company to another, it normally carries a margin over costs to cover the procuring company’s expense. There is no satisfactory evidence of how these materials were billed to the plaintiff. There is no satisfactory evidence that the plaintiff shared any home office salaries or expenses prior to July 1, 1948, or that they were essential to the conduct of its school in New York. The Board properly held that they were not a necessary or allowable expense.
20. The Board held that the employment of an accountant was not a proper and reasonable cost, since the school provided a bookkeeper and on occasion employed public accountants. Plaintiff’s school has regularly employed an accountant as part of its office force since 1935. In addition to performing accounting duties, such as preparation of interim reports and financial statements, the accountant has also served as an assistant to the manager of the school. The item was not in dispute, having been allowed by the Veterans Administration. The Board’s exclusion of this item was arbitrary and not supported by substantial evidence. His projected salary, including Social Security taxes, was $6,000.00, of which 71.43 percent is applicable to the day course.
The plaintiff reported travel and entertainment expense of $3,740.43. It consisted of $1,868.99 for travel to trade school meetings and purchasing supplies, lunches, dinners, local taxi fares, and travel and dinner allowances for office employees who were not paid for overtime. It also included $626.17 for travel to and expense at an executive meeting in Los Angeles, and $129.33 for portions of the expense of Hemphill and Dotterer in making a trip to New York. It also included $416.93 for attending a national con *589 vention and trips to Washington for conferences with the Veterans Administration.
The plaintiff’s report also included $699.01, representing costs for a company outing or picnic and for a Christmas party. The Board allowed the sum of $500 as a reasonable allowance for traveling expense.
Interest on loans, discoimts, and miscellaneous expense, which were first disallowed by the Veterans Administration, were also excluded by the Board on the ground that the record fails to support the allowance of these items.
It is not found that the decision of the Board was arbitrary or capricious or lacked support of substantial evidence.
21. The plaintiff furnished 316,621 hours of instruction to eligible veterans enrolled in the day course during the contract period from December 1, 1949, to November 30, 1950. The plaintiff was paid the contract rate of $.466 per student hour of instruction, amounting to $147,545.21.
The Board’s allowance of salaries reported in findings 17 and 18 obviously intended to include the payroll taxes applicable thereto. Such taxes, when allocated to the day course in the same manner as the salaries, amount to $581.84 ($496.12 plus $85.72). In addition, the salary of plaintiff’s regularly employed accountant should have been allowed and that the portion of such salary allocable to the day course is $4,285.80 (finding 20).
The regulations provide a profit allowance of % of costs for the calculation of a fair and reasonable tuition rate. The profit allowance on $4,867.64 ($581.84 plus $4,285.80) is $540.85, so that the total additional amount would be $5,408.49.
The plaintiff provided 420,047 student hours of instruction during the cost period. Thus the rate of tuition would be increased by $.0129 per student hour over the rate of tuition previously determined. By applying this rate increase to the 316,621 student hours of instruction furnished veterans during the contract period, the plaintiff would be entitled to the additional sum of $4,084.41.
*590 NEW COST DATA
22. Tbe plaintiff offered a report of its costs of operation during the contract period from December 1, 1949, to November 30,1950, upon which it now relies for the determination of a fair and reasonable rate of tuition for its day course of veteran training under its contract V3006V-687, Supplement No. 1, dated June 15, 1949. It was received as plaintiff’s exhibit 2. The defendant offered no testimony or other evidence to challenge the overall correctness of these figures.
It was prepared by a public accounting firm from other audit reports for the fiscal years ended March 31, 1950, and 1951, with adequate reference to the books of account maintained by plaintiff in its regular course of business. However, the report was not prepared in accordance with the expense classifications and limitations under the regulations of the Veterans Administration, but reported in the usual manner of reporting income and expense. All expenses were classified as operating, selling, and general administrative expense and nonoperating expense and income.
23. Student hours of instruction were not compiled from enrollment records, hut determined by dividing the total amount of tuition received by the hourly rate. Since the rates for both day and evening courses were fixed by contract for veterans during this period, the instruction hours paid for are accepted as correct. However, the instruction hours for nonveterans were determined upon the hourly rates which were made effective February 1, 1950, including the 10 percent increase in tuition, which resulted in a slight understatement of instruction hours for nonveterans.
24. The student hours of instruction were reported as follows:

*591

The above hours of student instruction reflect an average enrollment for the day course of 222, or approximately 78 percent of capacity, and the average enrollment for the evening course of 122, or approximately 43 percent of capacity. The enrollment in the evening course was maintained substantially as it was during the cost period ending March 31, 1949. However, the enrollment in the day course reflects an average reduction of 16 percent for veteran enrollment and 29 percent for nonveterans.
25. The plaintiff’s total operating costs during the contract period were $255,990.33, with the aggregate tuition income of $219,683.12, resulting in an operating loss of $36,307.21. After applying credits of $13,542.01 for other income, the plaintiff sustained a net loss for the period of $22,765.20.
The plaintiff’s operating loss for the contract period is not a fair measure of the insufficiency of its tuition rates, but reflects both the reduction in tuition income by reduced enrollment for the day course and also the increased costs in the period near the time of closing the school, after November 30,1950.
26. By using the hours of instruction as a basis for allocating its operating costs, the plaintiff apportioned 90.491 percent of the total operating costs of $255,990.33 to veteran training in the sum of $231,648.20.
The plaintiff then applied 84.4488 percent of $231,648.20, obtaining the sum of $195,756.48, which is claimed to represent the cost allocable to the day course for veteran training. By adding $21,750.72, representing one-ninth of such cost for a profit allowance, the total amount claimed for the determination of tuition is $217,507.20. From this sum the plaintiff deducted $147,545.51 received as tuition for veterans *592 attending the day course, and claims the difference of $69,961.69.
27. The plaintiff claimed that it used the same basis in allocating costs to the day course for the contract period as the Board used in allocating costs to the day course for the original cost period, represented by the overall proportion of 84.4488 percent.
The plaintiff’s original cost data did not include any cost of lesson material for its evening course, but only for the day course which was claimed at $28.20 per course. Since the evening course covered only 300 hours, as compared with the day course of 1,020 hours, the minimum cost of such material for the evening course was supplied at 29.41 percent of lesson material for the day course. The plaintiff’s total costs were thus determined to be $226,780.44. But the plaintiff supplemented the original cost data for increased salaries for teaching and related personnel effective December 1,1949.
In its original cost data the plaintiff’s teaching salaries, exclusive of payroll taxes, were $102,882.67, of which sum $79,545.80, or 77 percent, was allocated to the day course and $23,336.87, or 23 percent, was allocated to the evening course. The $79,545.80 represented 92.5 percent of the basic annual salary of $85,995.44 for all regular teaching personnel. The remaining basic salary of $6,449.64 was allocated to the evening course, plus overtime payments of $16,887.23 for regular personnel and part-time employees who were engaged for the night course only.
The plaintiff’s revised schedule for teaching shows that the basic annual salaries for all regular teaching personnel had been increased, effective December 1, 1949, from $85,995.44 to $99,000, or approximately 15 percent. This basic rate increase was maintained even though the regular working hours were first reduced to 38 hours a week, further reduced to 36 hours effective January 3, 1950, and finally reduced to 32 hours per week effective March 16,1950. Thus, after March 15, 1950, all of the time devoted to the night course by regular instructors became payable at the overtime rate at one and one-half times the regular rate. By applying the increased rates to the actual hours devoted *593 to the evening course, as reported by the plaintiff in its original cost data, it has been determined that the increase in overtime on the night course alone was substantially in excess of $14,000, whereas the increase in the basic annual salary was only approximately $13,000.
The plaintiff’s revised overall costs were actually in excess of $254,000, upon which the Board allocated $176,562.30 to the day course, which represents less than 70 percent of such revised costs.
The plaintiff furnished no explanation of how it determined that the Board allocated 84.4488 percent of total costs to the day course. In any event, the allocations for the cost period ending March 31, 1949, could not be properly applied to the contract period, since most of the allocations, other than teaching, were adopted by the Board on the basis of paid hours of attendance. The paid hours of attendance during the cost period reviewed by the VEAB were 84.74 percent for the day course, whereas, during the contract period, the paid attendance for the day course represented only 81.94 percent, a reduction of about 3.3 percent. Thus the 70 percent actually allocated by the Board to the day course for the cost period under review should be reduced to approximately 68 percent of the cost during the contract period for both day and evening courses.
28. The cost data submitted by the plaintiff for the contract period contained certain items totaling approximately $19,267.22, which are not proper for the determination of a fair and reasonable tuition rate.
The payment of commissions of $2,320.50 is specifically excluded by the regulations. Strike costs of $6,298.16, except $1,149.17 for substitute teachers, is not a normal cost for consideration in determining a fair and reasonable rate of tuition. Home office salaries of $4,297.16 and payroll taxes applicable thereto of $193.37, as well as home office expenses of $7,307.20 are not normal and necessary expense for the conduct of the plaintiff’s school. No apportionment was made of home office expense, although plaintiff only claimed 39.82 percent thereof in the previous cost submitted.
The plaintiff’s new cost data covering the period of the contract ended November 30, 1950, are not adequately ana *594 lyzed nor properly allocated for the determination of a fair and reasonable rate of tuition for the day course for the period involved. It is not acceptable or satisfactory as a basis for the determination of a fair and reasonable rate of tuition for the day course under Supplement No. 1 to plaintiff’s contract V3006V-687, or for any revision in the determination reported in finding 21.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover and it is therefore adjudged and ordered that plaintiff recover of and from the United States the sum of four thousand eighty-four dollars and forty-one cents ($4,084.41).

 The suit is limited to the day course, since a “frozen rate’’ has been established for the night course.

 The Veterans Tuition Appeals Board was appointed by the Administrator under Public Law 266, enacted August 24, 1949, but was superseded by the “Veterans’ Education Appeals Board,” whose members were appointed by the President pursuant to Public Law 610, enacted July 13, 195.0, and the plaintiff’s appeal was considered by the new board.

 Public Law 266 of the 81st Congress, first session, approved August 24, 1949, and known as the Independent Offices Appropriation Act, 1950, 63 Stat. 631, 653, provided, in respect of the Veterans Administration, in part:
* * * Provided further, That no part of this appropriation for education and training under title II of the Servicemen’s Readjustment Act, as amended, shall be expended subsequent to the effective date of this Act for subsistence allowance or for tuition, fees, or other charges in any of the following situations:
*****
(2) For any course of education or training for which the educational or training institution involved has no customary cost of tuition, until a fair and reasonable rate of payment for tuition, fees, or other charges for such course has been determined. In any case in which one or more contracts providing a rate or rates of tuition have been executed for two successive years, the rate established by the most recent contract shall be considered to be the customary cost of tuition notwithstanding the definition of “customary cost of tuition” as hereinafter set forth. If the Administrator finds that any institution has no customary cost of tuition he shall forthwith fix and pay or cause to be paid a fair and reasonable rate of payment for tuition, fees, and other charges for the courses offered by such institution. Any educational or training institution which is dissatisfied with a determination of a rate of payment for tuition, fees, or other charges under the foregoing provisions of this paragraph shall be entitled, upon application therefor, to a review of such determination (including the determination with respect to whether there is a customary cost of tuition) by a board to be known as the “Veterans’ Tuition Appeals Board” consisting of three members, appointed by the Administrator for such purposes. Such board shall be subject, in respect to appointment, hearings, appeals, and all other actions and qualifications, to the provisions of sections 5 to 11, inclusive, of the Administrative Procedure Act, approved June 11, 1946, as amended. The decision of such board with respect to all matters shall constitute the final administrative determination. In no event shall the board fix a rate of payment in excess of the maximum amount allowable under the Servicemen’s Readjustment Act, as amended. The term “customary cost of tuition” as employed herein and in paragraph 5, part VIII, Veterans Regulation Numbered 1(a), as amended, is regarded as that charge which an educational or training institution requires a nonveteran enrollee similarly circumstanced to pay as and for tuition for a course, except that the institution (other than nonprofit institution of higher learning) is not regarded as having a “customary cost of tuition” for the course or courses in question in the following circumstances:
(a) Where the majority of the enrollment of the educational and training institution in the course in question consists of veterans in training under Public Laws 16 and 346, Seventy-eighth Congress, as amended; and
'(b) One of the following conditions prevails :
1. The institution has been established subsequent to June 22, 1944.
2. The institution, although established prior to June 22, 1944, has not been in continuous operation since that date.
3. The institution, although established prior to June 22, 1944, has subsequently increased its total tuition charges for the course to all students more than 25 per centum.
4. The course (or a course of substantially the same length and character) was not provided for nonveteran students by the institution prior to June 22, 1944, although the institution itself was established before June 22, 1944: Provided further, That nothing in the foregoing proviso shall be construed to affect adversely any legal rights which have accrued prior to the date of enactment of this Act, or to affect payments to educational or training institutions under contracts in effect on such date.
The Veterans’ Tuition Appeals Board provided for in Public Law 266 was superseded by the “Veterans’ Education Appeals Board” by the act of July 13, 1950, Public Law 610, 64 Stat. 336, whose members were appointed by the President.