Jones, OMef Judge,
concurring in part:
I believe the plaintiff’s petition should be dismissed. I do not believe the facts in this case justify a finding that the action of the Veterans’ Appeals Board was either arbitrary or capricious or not supported by substantial evidence.
As we stated in the case of Hemphill Schools, Inc. v. United States, 146 Ct. Cl. 559, 570-571:
*848 we are neither authorized nor disposed to substitute our judgment for that of the experienced administrative agency, unless some of the exceptions [mentioned in the opinion] * * * are found to be present.
I would also dismiss the defendant’s counterclaim. The granting of defendant’s counterclaim is directly contrary to the finding of the Veterans’ Appeals Board. In the light of the facts of this case, I do not think we are justified in setting aside the findings of that authorized agency.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Paul H. McMurray, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff, Germain School of Photography, Inc., is, and at all times material herein has been, a corporation for profit duly organized and in existence under the laws of the State of New York, with its office and place of business located at 225 Broadway, New York, New York.
2. Plaintiff has, since December 15,1947, operated a vocational training school, which was licensed and approved by the Education Department of the State of New York to furnish education and training in the field of photography to eligible veterans under the Servicemen’s Readjustment Act of 1944, Public Law 846, 78th Cong., 2d Sess. (58 Stat. 284,287).
3. Plaintiff originally offered three courses of instruction as follows:
(a) Portrait Photography,
(b) Commercial Photography, and
(c) Retouching.
In October 1948 plaintiff added courses in air brush technique and natural color photography. In March 1949 a “Camera Repair and Mechanics” course was added. This course extended over a period of fifteen weeks and included 375 hours of instruction.
4. This action is brought for the purpose of recovering the difference between the amount plaintiff received from the defendant, acting through the Veterans Administration, for providing 94,280.5 student hours of instruction to Public *849 Law 346 veterans in the camera repair course during the period from May 1, 1950, to April 30, 1955, and the amount which the Court finds to be fair and reasonable. Plaintiff specifically claims $55,624.39 in the petition filed. The amount previously paid to plaintiff was based on a decision of the Veterans’ Education Appeals Board with respect to a fair and reasonable rate of tuition for the period from May 1, 1950, to April 30, 1951, the year covered by contract V3006V-899. Subsequent to April 30, 1951, the rate thus established by the Board was considered to be the school’s customary cost of tuition.
Plaintiff entered into the following written contracts with the Veterans Administration under Public Law 346 for the training of veterans in the camera repair course pertinent to this action:

5. Under the provisions of Public Law 266, 81st Cong., 1st Sess. (an item in the Independent Offices Appropriation Act, 1950, approved August 24, 1949, 63 Stat. 631, 653), ha the absence of a “customary cost of tuition” a school was to be paid a “fair and reasonable rate” for tuition. Plaintiff did not have a customary cost of tuition, as defined in this Act, for its camera repair course as of May 1,1950.
6. Effective July 1, 1948, the Veterans Administration issued Change 4 to Manual 7-5 (38 C.F.R. 21.530), the controlling agency regulations, which required that tuition rates would be henceforth determined on a fair and reasonable basis predicated upon detailed financial statements, hereinafter referred to as “cost data,” to be submitted by all profit schools such as that operated by the plaintiff. Change 4, which was still in effect as of May 1,1950, reads in pertinent part as follows:
*850 §21.530. Determination of fair and reasonable compensation. The determination, of fair and reasonable compensation by the manager, as in the case of courses of less than 30 weeks, or courses of 30 weeks or more in institutions other than nonprofit will require the submission by the educational or training institution of detailed, certified financial statements showing the most recent actual cost experience of the institution for the specific courses involved including cost data on the items of expense which will be used for the determination of fair and reasonable compensation, the basis on which teaching salaries and other expenses have been allocated to the courses involved, and the number of students enrolled and the number of clock hours or credit hours during the period covered by the cost data. In the case of new courses for which no actual cost experience is available, estimated costs may be submitted. *****
(b) For institutions other tha/n nonprofit for either courses of less than SO weeks or courses of SO weeks or more. Fair and reasonable compensation for schools operated for profit will not exceed the actual or estimated costs to the institution for providing the instruction, plus an allowance for profit as indicated below. In determining the fair and reasonable compensation all expenses, except expenses for sales commissions and promotional plans, which are reasonable and necessary for the operation of the courses involved will be included in the cost statement and such expenses will be grouped into the general categories set forth below within the limits designated.
(1) Actual cost of teaching and related personnel at reasonable salaries. Teaching and related personnel will include personnel essential to the teaching function such as laboratory supply room attendants and clerical personnel assisting teachers in the preparation of instructional material and records. The salaries of personnel serving both in administrative and teaching functions will fie prorated accordingly. The cost shown for teaching personnel will be supported by a schedule listing the name, title, annual salary rate, and will show whether employment is part-time or full-time for each person included in such cost.
(2) Consumable instructional supplies.
(3) Depreciation on building and equipment actually used for instruction of students at rates allowed by the Bureau of Internal Eevenue for income tax purposes.
(4) Eeasonable rent.
*851 (5) Cost of heat, light, power, water, janitor service, and building maintenance.
(6) Taxes and insurance, exclusive of income taxes.
(7) Actual administrative expenses which are considered reasonable and necessary in the operation of the school and are properly allocable to the courses under review. Such expenses may include salaries of administrative and clerical personnel representing reasonable compensation for services actually performed and the cost of such items as postage, telephone and telegraph, travel, interest, legal and accounting fees for actual service (not retainers), stationery and office supplies, and such other similar expenses as are reasonable and necessary for the operation of the school, provided that in no case will there be included in the fair and reasonable cost determination a base salary in excess of the rate of $10,000 per annum for an individual who has a proprietary or bonus interest in the institution. The administrative cost must be itemized and the salary items must be supported by a statement showing for each person the name, title, annual salary, percentage of time devoted to administration, and the amount of salary allocated to the cost of the courses under review. All cases where requested administrative costs exceed 15 percent of subparagraphs (1), (2), (5), and (6) of this paragraph shall be forwarded to the Assistant Administrator for Vocational Rehabilitation and Education, central office, for review and approval.
(8) Advertising expense calculated in accordance with the procedure set forth below and not to exceed the limitations prescribed herein.
(i) Determination of amoimt allowable for advertising expense. * * * Where the institution has not been established for a period of five years prior to June 22, 1944, and therefore does not have a fair standard of experience with relation to advertising costs prior to the enactment of Public Law 346,78th Congress, as amended, the institution may be permitted to include advertising expense actually incurred during the period covered by the cost review in an amoimt not to exceed the average percent of gross income from resident instruction which other well-established comparable schools in the area have expended for advertising for the five-year period immediately prior to June 22, 1944. If there are no other comparable schools in the area and if the institution does not have a five-year experience prior to June 22,1944, the schools may be authorized to include actual advertising costs at a rate shown by their experience but *852 not in an amount to exceed 8 percent of the total gross income from resident instruction for the period covered by the cost review without prior approval of Central Office. Where there are no other comparable well-established schools in the area and the actual advertising experience of the institution exceeds 8 percent of gross income from resident instruction, more than 8 percent may not be included in the fair and reasonable cost determination unless all facts are submitted to the Assistant Administrator for Vocational Rehabilitation and Education and approval is granted for the inclusion of advertising costs in excess of 8 percent. In no event will a newly established school, without actual cost experience for advertising expense, be permitted to include in a fair and reasonable cost statement, advertising expense in excess of 8 percent of gross income from tuition for resident instruction.
# $ ‡ $
(9) Profit not to exceed 10 percent of the amount customarily charged to non-veteran students for the course. * * * If no non-veteran students are enrolled and there is therefore no real customary charge actually being paid by non-veteran students, the profit allowance will be determined as one-ninth (%th), of the total allowable costs included in subparagraphs (1) through (8), inclusive, of this paragraph.
(10) Expenses for sales commissions and promotional plans will not be allowed.
(c) When the manager has completed his analysis of the cost data. When the manager has completed his analysis of the cost data, he will determine on the basis of the total number of all students trained and cost of the items listed herein, after reflecting known changes in costs, whether the customary charges of the educational or training institution are fair and reasonable. In making this determination the manager will give consideration to the fact that it is not fair and reasonable for the Veterans’ Administration to pay a charge based on the full cost of operating an educational institution under abnormal situations, such as periods when enrollments in the institution are far below the normal capacity and expectancy of the institution, or where operating costs are greatly in excess of normal operating costs for other comparable institutions in the same general locality. Contracts, when required, will be negotiated to provide payment not to exceed the amounts determined by the manager to be fair and reasonable as provided herein.
*853 7. Plaintiff operated the camera repair course at a tuition rate of $0,813 per student hour for the first six months to August 31, 1949, under contracts based on estimated costs. Under Change 4 plaintiff was required to submit cost data for the determination by the Administrator of a fair and reasonable tuition rate for the camera repair course for the contract period from September 1, 1949, to April 30, 1950. Accordingly, on February 10, 1950, plaintiff submitted to the Veterans Administration a statement of its actual cost of operations covering the period March 1, 1949, to November 30, 1949. After an analysis of the cost statement, the adjustment of various items deemed necessary by the Veterans Administration, and much negotiation with the plaintiff, contract V3006V-837, with the tuition rate of $0,406 per student hour, was entered into by plaintiff and the Veterans Administration about September 1950. In view of the fact that the period covered by this contract, hereinafter referred to as contract V-837, beginning September 1, 1949, and ending April 30, 1950, had elapsed before said contract was executed, the Veterans Administration utilized the same cost data and fixed the same rate for the period covered by contract V3006V-899, May 1, 1950, to April 30, 1951. Contract V3006V-899, hereinafter referred to as contract V-899, was signed by the plaintiff on October 24,1950. At the termination of contract V-899 on April 30, 1951, the rate therein specified was considered by the Veterans Administration to be the school’s customary cost of tuition, or “frozen” rate, acquired by sequence of contracts under Public Law 610, which became effective on July 13, 1950.
8. Public Law 610, 81st Cong., 2d Sess., 64 Stat. 336, authorized the formation of the Veterans’ Education Appeals Board and empowered it to hear appeals from actions of the Veterans Administration brought by educational institutions. P.L. 610 also provided, in pertinent part:
For any course of education or training for which the educational or training institution involved has no customary cost of tuition, a fair and reasonable rate of payment for tuition, fees, and other charges for such cost shall be determined by the Administrator. In any case in which one or more contracts providing a rate or rates of tuition have been entered into in two successive years, *854 tbe rate established by the most recent contract shall be considered to be the customary cost of tuition notwithstanding the definition of ‘customary cost of tuition’ as hereinbefore set forth. * * *
9. On September 11, 1950, pursuant to the provisions of Public Law 610, plaintiff made timely appeal of the tuition rates allowed in the above contracts to the Veterans’ Education Appeals Board, hereinafter referred to as the Board. The matter was referred to a hearing examiner, who heard testimony and received other evidence in June 1952. The hearing examiner rendered a decision on October 6, 1952, in which he found that the fair and reasonable rate of tuition was $0.8322 per student hour, based on the cost data furnished by plaintiff for the nine-month period from March 1, 1949, to November 30, 1949. The hearing examiner concluded that this tuition rate should be incorporated in contracts V-837, V-899, and V3006V-1157.
10. The Veterans Administration appealed from the decision of the Hearing Examiner. The Board, in a Memorandum Opinion and Order dated November 19, 1953, determined that the cost data submitted by the school and utilized by the Veterans Administration in determining a fair and reasonable tuition rate for contracts V-837 and V-899 was “stale” and not sufficiently representative for such purposes, since it covered the period from March 1,1949, to November 30,1949. Accordingly, the school was directed to submit cost data for the twelve months ending April 30, 1950, and the twelve months ending April 30, 1951, to supplement the record. Plaintiff filed certain cost data reflecting its operating experience for the requested periods. By letter dated February 19,1954, the Board notified the plaintiff that these cost statements were incomplete and did not fully comply with the Board’s order. The Board requested that certain specific additional material be supplied, but did not point out every item which it felt needed amplification. By letter dated March 25, 1954, plaintiff supplied most of the additional information specifically requested by the Board.
11. The Veterans Administration, on July 23, 1954, filed exceptions to the cost data submitted by the plaintiff, asserting that it was incomplete and inadequate. Plaintiff there *855 after filed a brief in opposition thereto, stating that the cost data submitted were sufficient for the Board to make a fair and reasonable rate determination. On October 6,1954, the Board issued a Memorandum Opinion and Order Reconvening Hearings, in which it stated that plaintiff must meet the necessary burden of proof and ran the calculated risk of not doing so when it questioned the relevancy or necessity for certain evidence that the Board deemed pertinent and essential for a complete administrative record. The Board requested that the Veterans Administration also supply such evidence as it had in order to aid the Board in its determination.
12. Hearings were convened and proceedings were conducted before the hearing examiner, after which he filed an initial decision in which he recommended that tuition rates for the camera course for the periods covered by contracts V-887 and V-899 be $0.86 and $1.06 per student hour, respectively.
The Veterans Administration filed exception to the initial decision and sought a review by the Board. Both parties filed briefs in support of their respective positions and then presented oral argument before the full Board based upon the complete administrative record.
On July 13, 1955, the Board issued its final decision in which it determined that a fair and reasonable tuition rate for the camera repair course was $0,497 for contract V-837 and $0,523 for contract V-899. The last mentioned contract is the one involved in suit.
13. Plaintiff filed a petition for a rehearing with the Board on July 26, 1955, which was denied by the Board on September 30,1955.
14. The complete record established in the administrative proceedings, consisting of the transcript of testimony, exhibits offered by both plaintiff and the Veterans Administration, the cost data submitted by plaintiff, all pleadings and briefs, and the transcript of the oral argument before the Board, together with all decisions and orders of the Board issued in this matter, has been received in evidence.
15. The New York State approval agency approved a student-teacher ratio of eighteen to one for the camera] *856 repair course at the time it was instituted. This agency approved a capacity of 32 students for the camera repair course as of April 1, 1952. No record of a previously-approved capacity for the course was put in evidence. The premises of the school at that time were identical with the premises used during the period involved in this suit. The approved capacity as of April 1, 1952, for the entire school was 294, with interchangeability of the facilities for all courses except the camera repair course.
16. No audit was made at any time by the Veterans Administration with respect to the accuracy of any of the costs supplied or other data presented by the plaintiff in the cost data furnished for the period covered by contract V-899, but the accuracy of such cost data is not in dispute here.
ENROLLMENT FACTOR
17. The Veterans’ Education Appeals Board found that during the period from May 1, 1949, to April 30, 1950, plaintiff had 71,235.75 paid student hours of attendance for the camera repair course of the total paid student hours of 261,158 for the entire school, which represented 27.3 percent of the total hours of instruction given during the period. In the second cost data period, May 1, 1950, to April 30, 1951, the school reported total instruction in all courses decreased to 206,331.75 hours, of which 53,272 paid instructional hours pertained to the camera repair course. This was equivalent to 25.8 percent of the total hours of instruction furnished by plaintiff in all its courses.
During the first year the school expanded its facilities and the camera repair course was allotted additional space for instruction. It was determined that, during the month of January 1950, after the expansion, the camera repair course operated at its approximate capacity, which was 7,464 student hours. Utilizing the above figure as the maximum capacity, the Board determined that for efficient operation of the camera repair course plaintiff school should operate this course at a minimum of 80 percent of this capacity for reasonably efficient use of the available facilities of the school, or at the rate of 71,654 student hours per year. Plaintiff *857 conducted two five-hour day classes, five days a week, and evening classes of four hours, five evenings a week, or 70 hours of instruction per week. The 7,464 student hours for January 1950 were considerably less than the maximum 32 students per session which was plaintiff’s capacity for this course fixed by the New York State approval agency as of April 1,1952, at which time the same area was occupied by the school. The Board’s determination of a minimum annual enrollment factor of 71,654 student hours for the camera repair course was fair and reasonable.
18. In computing plaintiff’s tuition rate for the first year, the Board used actual enrollment of 71,235.75 student hours for that year, instead of the enrollment factor of 71,654 hours, because it compared favorably with the amount computed to be reasonable for the efficient use of the available facilities. The Board also used this same enrollment of 71,235.75 student hours as an enrollment factor in computing tuition rates for the second year, which covers the contract year in suit, on the premise that this represents the minimum efficient use of the available facilities of the school. The enrollment factor was used by the Board in establishing costs in instances where the amounts claimed were ample to service the reasonable utilization of the school’s facilities and in determining fixed costs. The Board used actual reported enrollment for this period of 53,272 student hours with respect to variable expenses which would increase and decrease depending upon the number of students.
The use of an enrollment factor computed to be the minimum enrollment for the reasonable use of the school’s facilities in a year when actual enrollment was considered abnormally low, was standard practice by the Veterans Administration. This procedure was also followed by the Board in computing a fair and reasonable tuition rate as provided by regulations.[2]
*858 TEACHING AND RELATED PERSONNEL
19. Plaintiff claimed $11,883 and $13,342.25, respectively, for instruction expenditures for the years ending April 30, 1950, and April 30, 1951, which, when based on actual enrollment for those years, was equivalent to $0.1668 and $0.25 per student hour. The Board allowed $0.1668 per hour on contract V-837, as claimed by plaintiff. For the year ending April 30, 1951 (contract V-899), the Board found the increase in instruction expenditures to $13,342.25 to be unreasonable in view of the decline in attendance of about 25 percent to 53,272 paid student hours.
The Board found that plaintiff presented no proof as to the necessity of the increased expenditures aside from an increase in salary to certain individuals. The Board felt that if $0.1668 per student hour was adequate to give 25 percent more instruction than the school experienced in the latter contract year, and the teaching staff was adequate, the decline in business was a risk assumed solely by the plaintiff, and prudent, economical management required the reduction of expenses in such a period, including a reduction in instructors. The Board thereupon found that the rate of $0.1668 per student hour allowed on the previous contract was the fair and reasonable rate to be allowed on the contract in suit.
20. A comparison between the camera repair course and the other five courses taught by plaintiff school, for the years ending April 30, 1950, and April 30, 1951, reveals that the student hours for the camera repair course decreased from 71,235.75 to 53,272, a decrease of 25.22 percent, whereas, the cost of instruction increased from $11,833 to $13,342.25, an increase of 12.28 percent. Plaintiff’s other five courses had a decrease in student hours from 189,992.25 to 153,059, a decrease of 19.40 percent. These courses had a corresponding decrease in instructional expenses from $62,285.89 to $48,620.50, equivalent to a decrease of 21.94 percent. Thus plaintiff’s cost data reveals that the other five courses taught by plaintiff school had a percentage decrease in instructional costs greater than the decrease in attendance, whereas, the camera repair course had an increase in instruction costs of 12.28 percent while its attendance decreased 25.22 percent.
*859 CONSUMABLE SUPPLIES
21. The plaintiff assumed a consumption of consumable supplies at a rate of $0.2503 per student hour for both years for which cost data was furnished, and estimated its opening and closing inventories on this assumption. The Board contended that much of these supplies purchased had a useful life of at least one year, and concluded that at least 40 percent of these consumable supplies remained in continued instructional use on April 30, 1951. The Board therefore allowed the plaintiff $0.15 per student hour for both contract periods.
Consumable supplies are items used up in direct proportion to the student hours taught, and the enrollment factor should not be and was not considered in computing a fair and reasonable rate for this item of costs. These supplies are usually purchased for present needs and for estimated needs of the immediate future.
During the year ending April 30,1950, plaintiff purchased consumable supplies in the amount of $24,699.24 for the camera repair course, whereas, in the year ending April 30, 1951, plaintiff purchased only $6,959.57 of consumable supplies for this course. Plaintiff’s attendance dropped 25.22 percent in the latter year, whereas purchases of consumable supplies dropped 71.82 percent. It is reasonable to conclude that some of the consumable supplies purchased in the first year were not used during that year, and that some of these supplies were available for use in the second year or later.
22. Plaintiff furnished no actual inventories for the first or second years, but estimated its inventories based on the consumption of consumable supplies at a rate of $0.2503 per student hour. Plaintiff was aware that its contracts for all courses would expire on April 30, 1950, and received a letter from the Veterans Administration to that effect in late January or early February 1950 which instructed plaintiff to begin preparation of cost data to be submitted for tuition purposes. Veterans Administration regulations, as amended by Change 4, in effect at that time, required the submission of cost data for the determination of a fair and reasonable rate of tuition if a customary rate of tuition had *860 not been established. Inventories of consumable supplies would be one of the important and necessary items in this cost data. Plaintiff’s director, Milton Willenson, took an actual inventory of consumable supplies at “about the end of April [1950],” which would have served as the closing inventory for the first year and the opening inventory for contract V-899, involved in this suit. Plaintiff, however, was unable to locate and produce this inventory at any of the administrative hearings.
23. Plaintiff took actual inventories at the end of its fiscal years on July 31,1950, and July 31,1951, three months after the period pertinent to this suit, which are in evidence. These inventories would reasonably reflect plaintiff’s normal inventories in the contract year from May 1, 1950, to April 30,1951. Plaintiff’s director testified that these inventories, for the most part, consisted of consumable supplies for the camera repair course. It is thus reasonable to assume that 75 percent of such inventories would represent camera repair supplies. Both of these inventories were taken after commencement of the Korean hostilities and plaintiff’s director testified that prices rose after commencement of the trouble in Korea and, in all probability, inventories were taken at cost rather than market price.
The following computation represents the approximate consumable supplies used during the year in suit by the camera repair course students, using the available inventories :
Opening inventory at July 31, 1950 (75 percent of $2,107.40)_$1,580.55
Consumable supplies purchased during contract year (May 1, 1950, to April 30, 1951)_ 6,959.57
Total available for consumption_ 8, 540.12
Less closing inventory July 31, 1951 (75 percent of $3,714.63)_ 2,785.97
Approximate supplies consumed during the year ended April 30, 1951_$5, 754.15
Actual attendance during this period was 53,272 student hours which would result in a consumption rate of $0.1080 per student hour for consumable supplies.
*861 During the three months following the contract year ending April 30, 1951, the plaintiff provided 8,798.5 student hours of instruction in the camera repair course. In the same three months plaintiff purchased $467.72 in consumable supplies, which represents a cost of only $0.0531 per student hour. It is reasonable to conclude that the actual use of consumable supplies during the period from May through July 1951 was substantially greater than the cost of purchases at $0.0531 per student hour, and that the inventory at April 30, 1951, was substantially greater than the actual inventory at July 31,1951, which was used as the final inventory in the foregoing computation.
24. It is highly probable, as was found by the Board, that much of the equipment purchased as consumable supplies during the first year was in continued use by the school throughout the second year and well into the third year. Otherwise, substantial economies in the use of consumable supplies were made by the school in the second and third years, which plaintiff admitted was possible in a letter to the Veterans Administration dated June 5, 1950, which stated that future costs could be much lower after May 1950 if the school discontinued the use of various foreign cameras in the camera repair course.
RENT; DEPRECIATION AND AMORTIZATION; OPERATION AND MAINTENANCE EXPENSES
25. The expenses of rent, depreciation, amortization of leasehold improvements, and operation and maintenance were costs of conducting the entire school and, for the most part, were applicable to all of the courses offered by plaintiff. Accordingly, in order to allocate these overall coste to specific courses, it was necessary to prorate such expenses.
Plaintiff in its costs data statements allocated its total expenses for these items to the camera repair course on a student-hour ratio, and claimed 27.3 percent of such expenses for the camera repair course in the first year and 25.8 percent for the camera repair course in the second year. The Board disagreed with the plaintiff, and concluded that the above items of cost, except for depreciation, lent themselves more equitably to proration on the basis of space occupied, *862 rather than on a student-hour basis, and so allocated them.
The Board noted that the state approval agency, in authorizing instruction in the camera repair course, stated that facilities for all courses were interchangeable except for the camera repair course. The Board also considered that plaintiff, in its two previous cost statements submitted to the Veterans Administration, apportioned these items on an area basis.
The Board found that amortization of leasehold improvements differed from depreciation and was in the nature of additional rent and should be so treated.
The camera repair course did not use the various laboratories and darkrooms used for developing, enlarging, and other photographic processes; these facilities were interchangeable with all of the other courses, except the camera repair course. Plaintiff allocated these items on an area basis in the previous two cost statements furnished to the Veterans Administration.
26. The camera repair course occupied 600 square feet of the original 9,080 square feet leased by the school from its inception in March 1949 until the school acquired the annex of 2,400 additional square feet about December 1949.
Plaintiff, in cost data for the nine months ending November 80, 1949, estimated that the camera repair course would occupy 65 percent of the 2,400 square-foot addition, or 1,560 square feet. Plaintiff’s cost data for the year ending February 28, 1950, submitted in April 1950, which was long after the annex was occupied by the school, revealed that the camera repair course did, in fact, occupy 1,560 square feet of the annex. Plaintiff’s director testified that the camera repair course was taught, for the most part, in the annex, and occupied an average of about 1,500 square feet after the annex was acquired. He stated that the space used by the camera repair course was also used by other courses.
Since the entire period covered by contract V-899 was after the acquisition of the annex, when plaintiff was occupying a total of 11,430 square feet, the Board’s allocation for the camera repair course on the basis of 1,560 square feet, or 13.65 percent of the total school area, was fair and reasonable. The Board specifically requested that plaintiff furnish this *863 information on the space occupied by each course on an area basis in the cost data requested by the Board. Plaintiff failed to comply with this request.
RENT
27. Plaintiff paid total rent of $18,399.92 during the year covered by contract V-899. The cost of the camera repair course on the basis of 13.65 percent was $1,829.09. Since this course had 53,272 paid student hours of instruction during that year, the actual cost per student hour would be $0.0343.
depreciation and amortization
28. The plaintiff amortized the total amount of leasehold improvements for all courses, amounting to $33,567 at the year ending April 30,1951, over the entire period of the lease, five years, or at a rate of 20 percent, which was equivalent to $6,713.40 per year for all courses. Photographic furniture and fixtures and office equipment used by the entire school were depreciated at a rate of 10 percent per year, resulting in depreciation of $369.77 and $277.39, respectively. Plaintiff allocated this total sum of $7,360.54 on a student-hour ratio (25.8 percent), resulting in the allocation of the amount of $1,899.02 to the camera repair course. The depreciation of photographic equipment used entirely by the camera repair course at 10 percent of the cost of $1,415.28, amounting to $141.53, was added, and the total amount claimed by plaintiff for depreciation and amortization was $2,040.55. This resulted in a rate of $0.0383 on the basis of actual student hours of 53,272.
29. The Board held that the amortization of leasehold improvements differed from depreciation and was more closely related to rent and should be amortized on that basis. The Board allocated the $6,713.40 of leasehold improvements at a rate of 13.65 percent and thereafter used the same method and amounts used by plaintiff to arrive at a total cost of $1,224.88 for the camera repair course. The Board, using the enrollment factor of 71,235.75 student hours, arrived at a rate of $0.0172 per student hour.
30. The plaintiff claimed amortization of all leasehold improvements and allocated the total figure on the basis of the *864 ratio of student hours in the camera repair course to student hours in all other courses. In computing the fair and reasonable amortization, the Board allowed costs of leasehold improvements which had no connection with the camera repair course. Wherever actual cost of leasehold improvements directly relating to the camera repair course and usable by that course only are determinable, sound practice would require that they be amortized over the remaining life of the lease.
31. Plaintiff school began operations in December 1941, having three photographic courses, and necessarily needed the various laboratories, dark rooms, and equipment for the use of these courses. In October 1948, two additional courses were added. The facilities of these courses were interchangeable among courses, with the probable exception of color laboratories. In March 1949 a camera repair course was instituted, but could not use the various facilities set up for these other courses and should not be burdened with their cost.
Plaintiff’s cost data submitted to the Veterans Administration for the year from March 1,1949, to February 28,1950 (which cost data included the beginning of the operations of the camera repair course), reveals that plaintiff expended $20,934.10 on the original leasehold improvements and an additional $4,917.00 for leasehold improvements for the color course, which were made prior to the institution of the camera repair course.
This cost statement reveals the following regarding leasehold improvements chargeable to the various courses:
Leasehold improvements — General_$20,934.10
Leasehold improvements — Color Course_ 4, 977.00
Total leasehold improvements made prior to March
1, 1949 _ 25,911.10
Leasehold improvements made during year March 1, 1949, to February 28,1950:
Color Course_ $1,050.00
Airbrush Course_ 2,250.19
Camera Repair Course_ 703.71
Purchase of lease_ 3,000. 00 7, 003.90
Total leasehold improvements made to February 28, 1950_ $32,915.00
*865 Plaintiff’s cost data for the year ending April 30, 1950, contains no additional leasehold improvements other than those shown in the cost data for the year ended February 28, 1950. Plaintiff’s cost data for the year ending April 30,1951, contains only two small additional items of leasehold improvements, these being for construction of walls and partitions $357.00, and for plumbing and sinks $295.00. These were not designated as to courses. These items increased the total expenditures for leasehold improvements to $33,567.00 as of April 30,1951.
32. The total cost of leasehold improvements included $9,850.92 for plumbing and sinks which were used exclusively by other courses in laboratories, darkrooms and finishing rooms, etc. These costs also included $7,950.51 for electrical wiring and installations, including a special air conditioner for the color course, of which only $703.71 of the wiring and installation was expended for the camera repair course. These costs also included various other items which have no connection with the camera repair course.[3]
33. It is reasonable to conclude that the entire amount of $357.00 for the construction of walls and partitions was spent in the school annex, 65 percent of which was occupied by the camera repair course and should be so allocated.
The $3,000.00 paid for the purchase of the lease for the school annex was necessary for the expansion of the school. This benefited all courses and should be allocated on the basis of the area used by the various courses, of which 13.65 percent is allocable to the camera repair course. The amount of $703.71 for electric wiring is directly chargeable to the camera repair course.
The following is a computation of leasehold improvements for the camera repair course:

Leasehold, Improvement Amount

Construction of walls and partitions, 65% of $357.00_ $232.05
Electric wiring_ 703. 71
Purchase of lease, 13.65% of $3,000_ 409.50
Total allocable to camera repair course_$1, 345.26
*866 Leasehold improvements should properly be amortized over the remaining life of the lease. Since these improvements for the camera repair course were made after about two and one-half years had expired on plaintiff’s five-year lease, these improvements should be amortized at a rate of 40 percent per year. (The annex lease expired on October 31,1952, the same date as the original lease.)
34. Photographic furniture and fixtures for all courses included stands and easels for $563.32 and a drawing board for $54.00. These items are not deemed necessary to the camera repair course, were used only in other courses, and should not be included as depreciable items assigned to the camera repair course.
The following is a schedule of depreciation and amortization for the camera repair course for the year ending April 30, 1951, which is the period of the contract in suit:

By dividing the above total by actual student hours of 53,272, a rate of $0.0156 per student hour is obtained.
By applying the enrollment factor of 71,235.75 student hours, the rate would be $0.0117 per student hour.
OPERATION AND MAINTENANCE
35. Plaintiff’s operation and maintenance costs were $15,959.78 for the year ended April 30, 1951. When allocated on a student-hour basis, the total of such costs amounted to $4,117.62 for the camera repair course. The plaintiff claimed the rate of $0.0773 per student hour using actual enrollment of 53,272 hours.
The Board determined that operation and maintenance costs are more closely related to the area dedicated to the particular course of instruction, and allocated these costs on *867 that basis (13.65 percent of $15,959.78). The Board thus determined a cost of $2,177.76 for operation and maintenance applicable to the camera repair course, and, using the enrollment factor of 71,235.75 student hours, arrived at a rate of $0.0306 per student hour.
By applying actual enrollment of 53,272 student hours, the rate would be $0.0409 per student hour.
TAXES AND INSURANCE
36. Plaintiff’s total taxes and insurance for the year ended April 30, 1950, was $4,770.53, and for the year ended April '30, 1951, covering the contract in suit, was $6,045.59. The rates claimed on the basis of actual enrollment were $0.0182 per student hour in the first year and $0.0293 for the second year.
The Board allowed plaintiff’s actual cost as claimed for the first year at the rate of $0.0182 per student hour for contract V-837. The Board also allowed this rate for the year ended April 30, 1951, covered by contract V-899, on the premise that the substantial decrease in enrollment could not justify any increase in the normal costs of taxes and insurance. This item was treated by the Board in the same manner as the determination made for the cost of instruction in findings 19 and 20 herein.
Plaintiff’s increase of $1,275.06 for taxes and insurance during the year ended April 30,1951, resulted in part from increases of $364.52 for payroll taxes and insurance. The largest increase was in state franchise tax, which was $79.21 for the year ended April 30, 1950, and $763.53 for the year ended April 30, 1951. The remaining increase was from greater payments for business taxes and protection services.
The Board ignored the increases other than those based on payrolls. The defendant failed to verify them. The plaintiff failed to explain or justify the increase in these items of cost for the year ended April 30,1951, over the prior year, but furnished them pursuant to the Board’s order.
The fair and reasonable basis for the allocation of these items of cost is in proportion to the student hours of attendance for each course. If all taxes are allowed the amount allocable to the camera repair course is 25.8 percent *868 of $6,045.59, or the sum of $1,559.76. The tax and insurance cost arrived at is $0.0219 per student hour determined upon the minimum enrollment factor of 71,235.75 student hours.
ADMINISTRATIVE EXPENSES
37. Plaintiff claimed administrative expenses of $42,945.80 for the year covered by contract V-899, here in suit, of which $1,000.00 was claimed as a direct charge against the camera repair course. Based on a student-hour ratio of 25.8 percent and using actual student hours of 53,272, plaintiff arrived at a rate of $0.02268 per student hour. In plaintiff’s proposed findings it now claims as fair and reasonable a rate of $0.2013 which was computed as above, after making a deduction of $5,24’3.31 from the total administrative expenses.
38. The Board allowed plaintiff a tuition rate item of $0.0553 for administrative expenses which was the same rate allowed on the previous contract V-837, and was the amount allowed by the Veterans Administration in arriving at its original tuition rate of $0,406 per student hour for instant course. This rate was based on a “conversion formula,” which allowed 18 percent of the total amount allowed for teaching personnel, consumable supplies, operation and maintenance, taxes and insurance, depreciation, rent, and advertising, less other income, based on cost data for the nine-month period from March 1, 1949, to November 30, 1949.
The Board found the plaintiff failed to bear its burden of proof in justifying the administrative expenses in the amount claimed and failed to satisfy the Board that all of the expenditures were either necessary or reasonable. The Board noted that student-hour costs for the camera repair course increased, in the contract year in suit, over the previous year, despite the decrease in enrollment of over 20 percent for all courses, and over 25 percent for the camera repair course. The Board cited its previous decision in West Coast University v. Administrator, VEAB No. 115, December 15, 1954, in which it reviewed administrative allowances in a number of prior decisions. The Board noted that in cases considering administrative costs for rate purposes, the Board averaged allowances of $0,044 per student hour in the years 1951 through 1953, and slightly lower in 1954, and noted that *869 “administrative expense is a type of expense that does not ordinarily depend on the type of course.” The Board found plaintiff had not shown any problems peculiar to the courses offered which imposed a greater administrative burden than ordinarily would accompany the teaching of other courses, and found the allowance of $0.0553 adequate. With respect to accounting fees, the Board found no evidence was adduced to show services rendered, or the basis for these charges. The Board also rejected plaintiff’s claim of $2,831.79 for interest in the period covering contract V-899 as untenable, and found that the interest paid by the school was the result of insufficient working capital, and that plaintiff would have needed a bank loan regardless of whether there was a delay by the Veterans Administration in payment of vouchers submitted. The Board made no further attempt to take up additional expenditures, on the ground that plaintiff failed in its burden of proof to justify these expenditures. The Board, in rejecting plaintiff’s petition for a rehearing, stated, with regard to administrative expenses, “* * * the principle of decreasing cost comes into play as courses are added * *
39. The Board’s finding of $0.0553 per student hour is based on (1) the Veterans Administration’s so-called “conversion formula” for a different cost period, (2) previous average rulings by the Board, and (3) a holding that plaintiff failed to bear its burden of proof for the costs claimed.
The defendant made no effort to audit or analyze any of the costs claimed by plaintiff in the contract year now in suit.
40. Plaintiff claimed total administrative expenses of $44,940.73 for the year ending April 30,1950, and $42,945.80 for the year ending April 30, 1951. Plaintiff appealed the 15 percent limitation of administrative expenses requirement by letter dated June 5,1950.
The legal fee of $1,000, which was listed as a direct charge to the camera repair course should not be included in the determination of a fair and reasonable tuition rate, since this amount is for the prosecution of the instant claim and is a nonrecurring expense.
*870 41. Plaintiff listed two full-time and two part-time bookkeepers in its cost data schedules submitted. In addition, plaintiff had three outside accountants during the pertinent period performing accounting .work for the school. Herman Miller & Co. was the regular accounting firm and was paid at a rate of $185 per month. This firm also received $1,100 from plaintiff for assisting in the preparation of cost data and attending conferences. This was $230 more than this firm received the previous year. Plaintiff paid accountant Litman Kraus for services, including preparation of cost data, for which he received $2,000. This was $1,000 more than he received the previous year. A third accountant received $300. He had not been employed the previous year.
It is reasonable to conclude that the increased accounting expenses were incurred by reason of the various additional items of cost data submitted at the request of the Veterans Administration during protracted negotiations, and would not be recurring.
42. Interest is a normal business expense which is an allowable item under the Veterans Administration regulations in computing administrative expenses (Veterans Administration Manual 7-5, as amended by Change 4, supra). The amount of $2,831.79 was deemed excessive by the Board. Plaintiff’s balance sheet for the fiscal year ending July 31, 1950, reveals $133,162.59 in accounts due from the Veterans Administration, of which $16,313.04 was assigned to the bank. Additional loans amounted to $63,600.00. Plaintiff’s balance sheet for the fiscal year ending July 31,1951, reveals an amount due from the Veterans Administration of $62,-167.84. Loans from the bank and others totaled $33,902.01. The $62,167.84 was due plaintiff from the Veterans Administration after plaintiff’s contracts had been negotiated and in effect for almost a year. Plaintiff’s gross income for that fiscal year was $250,054.34, so that the amount owed by the Veterans Administration would be about 25 percent of gross. It appears that the amount of $2,831.79 claimed by plaintiff as interest expense was due largely to failure of the Veterans Administration to pay vouchers promptly.
43. Since it was found that a space basis would be more accurate in the determination of rent, operation and mainte *871 nance, and amortization of leasehold improvements, these expenses, as they pertain to the administrative office space, should he allocated to administrative expense. During the period in dispute, the school used 875 square feet of space, or 7.65 percent of the total of 11,430 square feet for the administrative offices. The following additional expenses should be included in the total administrative expense:

Item, Amount

Rent, 7.65% of $13,399.92_$1, 025. 09
Operation and Maintenance, 7.65% of $15,959.78- 1,220.92
Amortization of Leasehold Improvements, 7.65% of $2,403.66_ 183. 88
Total added to administrative expense-$2,429. 89
The amortization of leasehold improvements does not include charges directly assignable to the various courses. The amortization of $2,403.66 represents 20 percent of $12,018.30 not otherwise assignable to photographic courses.
The total administrative expense computed herein was $38,602.38, which, when allocated on a student-hour ratio of 25.8 percent, is equivalent to $9,959.41 for the camera repair course.
When computed on actual student hours for the year, the tuition rate is $0.1869 per student hour for the camera repair course. By applying the minimum enrollment factor of 71,235.75 student hours, the tuition rate equals $0.1398 per student hour.
The evidence supports a finding that the plaintiff’s fair and reasonable administrative expenses for the year ended April 30,1951, are as follows:
Administration and clerical salaries_$25,746.05
Accounting fees_ 3,490.00
Telephone and telegraphic expense- 1,194.40
Casual clerical help_ 323.05
Stationery and postage_ 2,231. 92
Interest and bank charges- 2, 831.79
Dues, licenses, and permits- 211. 00
Convention expenses_ 72. 00
Alumni association expense- 63.57
Tax Stamps- 75.00
Signs_.__ — --— 43. 84
*872 Apportionment of rent, operation, and maintenance, and
leasehold improvements_ 2, 429. 89
38, 712. 51
Less purchase discounts_ 110.13
Total-$38,602.38
ADVERTISING
44. Plaintiff claimed $23,110.57 for advertising expenses for the year pertinent to this suit, which was $3,684.46 more than expended the previous year, and allocated this on the student-hour ratio of 25.8 percent for the camera repair course, which resulted in an amount of $5,962.53. This would result in a rate of $0,119 per student hour. Plaintiff’s gross tuition was $195,727.90 for all courses during the year ending April 30,1951.
The Veterans Administration contended that the plaintiff should be allowed advertising expense in an amount not more than 8 percent of its gross income from the camera repair course only. The Board, in agreeing, stated that there should be some reasonable relationship of advertising expenditures to expected income from the camera repair course, and determined that a reasonable expenditure for advertising purposes would be 8 percent of such income.
45. The camera repair course accounted for tuition of $23,263.45, or approximately 11.88 percent of total tuition from all courses on cost data reported. The percentage of total tuition realized from the camera course would, of course, be increased if a fair and reasonable tuition rate which is higher than the contract rate is allowed. The pro rata share of the camera course in the total advertising expenditure would also be increased. The eight percent factor for advertising would result in a figure lower than that claimed by plaintiff, however, even if there should be a sizable increase of tuition allowed as a fair and reasonable rate. Plaintiff school had no cost experience in advertising in the five-year period prior to June 22, 1944. The advertising costs of the one other school presented in evidence by plaintiff for comparative purposes contained no camera repair course. No evidence was presented of costs of other schools *873 having camera repair courses with advertising experience for the five-year period prior to June 22, 1944, on which to base an average as required by the regulations.
OTHER INCOME
46. The schedule of other income furnished by plaintiff revealed that $2,158.81 was applicable to the camera repair course. When allocated on a basis of 53,272 student hours, this is equivalent to $0.0406 per student hour.
The Board reduced the amount of other income, which was not in issue, from $2,158.81 to $1,871.56 without adequate explanation or justification, resulting in a rate of $0.0351 per student hour.
47. The following is a schedule of tuition rates for the camera repair course submitted by plaintiff to the Appeals Board, and as computed herein, covering contract V-899:

COUNTERCLAIM
48.The defendant filed a counterclaim stating that the Veterans’ Education Appeals Board was without legal authority to fix a fair and reasonable rate on contract V-899 commencing on May 1,1950, since plaintiff and the Veterans *874 Administration bad entered into two or more contracts previously which covered periods in the years 1949 and 1950, and plaintiff had acquired a customary cost of tuition freezing the rate. Contract V-837 was signed in August 1950 by plaintiff and in September 1950 by the Veterans Administration while P.L. 610, 81st Cong., 2d Sess., enacted on July 13, 1950, was in full force and effect. Contract V-899 covered the period immediately following contract V-837 and was signed by both parties subsequent to the passage of P.L. 610 and the signing of contract V-837. The rate in contract V-837 became the customary cost of tuition or frozen rate for all instruction subsequent to the terminal date of that contract since the requirements of P.L. 610 for establishment of a customary cost had been met, viz., plaintiff and the Veterans Administration had entered into three contracts in two successive years. Accordingly, the Veterans’ Education Appeals Board was without legal authority to fix a fair and reasonable rate of tuition for contract V-899 which was to cover the period succeeding contract V-837. The fair and reasonable rate for contract V-837 of $0,497, to which plaintiff has not excepted or objected, became the customary cost of tuition for all periods of instruction in camera repair subsequent to April 30, 1950. Therefore, any amount in excess of $0,497 per student hour for periods of instruction on or subsequent to May 1, 1950, paid to plaintiff may be recovered by the defendant since it constitutes an overpayment.
49. The plaintiff furnished 94,280.5 hours of instruction to veterans in the camera repair course during the year ended April 30,1951, and thereafter. Plaintiff was paid for 91,309 hours of such instruction at $0,523 per student hour, the rate set by the Board, and for 2,971.5 hours at $0,406 per student hour, the original contract rate. This computation results in respective sums of $47,754.61 and $1,206.43, or a grand total of $48,961.04, which has been paid to plaintiff for camera repair instruction given to veterans for all periods beginning on May 1, 1950. However, the plaintiff should have received payment for 94,280.5 hours of instruction at the frozen rate of $0,497 per student hour. Under this correct method of computation the amount due and owing plain *875 tiff for instruction is $46,857.41. The excess of what plaintiff was paid over what it should have been paid amounts to $2,103.63 which is the amount to which defendant is entitled on its counterclaim.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover and its petition will be dismissed. It is further adjudged that the defendant is entitled to recover on its counterclaim, and it is therefore adjudged and ordered that the defendant, The United States, recover of and from the plaintiff, Germain School of Photography, Inc., the sum of two thousand one hundred three dollars and sixty-three cents ($2,103.63).

 Veterans Administration Manual 7-5, as amended by Change 4, under section (e), states: “* * * In making this determination the manager will give consideration to the fact that It is not fair and reasonable for the Veterans" Administration to pay a charge based on the full cost of operating an, educational institution under abnormal situations, such as periods when enrollments in the Institution are far below the normal capacity and expectancy of the institution. * * *”

 The camera repair course had total photographic equipment costing only $1,415.28, while the other five courses had equipment costing $26,827.83, an average of more than $5,000 per course.